# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED PARCEL SERVICE, INC., | |
| *Plaintiff*, | |
| v. | C.A. No. 1:24-CV-01036-CFC |
| OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION; U.S. DEPARTMENT OF LABOR; and, JULIE A. SU, in her official capacity as Acting Secretary of Labor, | |
| *Defendants*. | |

## DECLARATION OF BRANDON J. BRIGHAM IN SUPPORT OF PLAINTIFF UNITED PARCEL SERVICE, INC.'S MOTION FOR SUMMARY JUDGMENT

I, Brandon J. Brigham, hereby state and declare as follows:

1.     I am an attorney of record for Plaintiff United Parcel Service, Inc. ("UPS") in the above-captioned matter.  This declaration is based on my personal knowledge or my review of records and is submitted in support of UPS's Motion for Summary Judgment. If I were called to provide testimony concerning these statements I could and would do so truthfully.

2.     Attached as **Exhibit 1** is a true and correct copy of the "Inspection Detail," available on the Occupational Safety and Health Administration's ("OSHA") official website, regarding OSHA Inspection 1761398. **Exhibit 1** shows

1

that, on July 12, 2024, OSHA opened an inspection regarding UPS's worksite located at 300 Redbud Blvd., McKinney, Texas 75069. *See also* https://www.osha.gov/ords/imis/establishment.inspection_detail?id=1761398.015.

3. Attached as **Exhibit 2** is a true and correct copy of the "Inspection Detail," available OSHA's official website, regarding OSHA Inspection 1760872. **Exhibit 2** shows that, on July 15, 2024, OSHA opened an inspection regarding UPS's worksite located at 721 Hamburg Road, New Castle, Delaware 19720. *See also* https://www.osha.gov/ords/imis/establishment.inspection_detail?id=1760872.015.

4. Attached as **Exhibit 3** is a true and correct copy of the "Inspection Detail," available OSHA's official website, regarding OSHA Inspection 1762269. **Exhibit 3** shows that, on July 18, 2024, OSHA opened an inspection regarding UPS's worksite located at 15994 S. Dupont Highway, Harrington, Delaware 19952. *See also* https://www.osha.gov/ords/imis/establishment.inspection_detail?id=1762269.015.

5. Attached as **Exhibit 4** is a true and correct copy of the "Request for Inspection Warrant Under the Occupational Safety and Health Act" regarding OSHA Inspection 1761398 that Defendants filed with the United States District Court for the Eastern District of Texas in Case No. 4:24MJ582.

6.  Attached as **Exhibit 5** is a true and correct copy of the "Inspection Warrant" regarding OSHA Inspection 1761398 that the United States District Court for the Eastern District of Texas issued in Case No. 4:24MJ582.

7.  Attached as **Exhibit 6** is a true and correct copy of the "Ex-Parte Application for Inspection Warrant Under the Occupational Safety and Health Act of 1970" regarding OSHA Inspection 1760872 that Defendants filed with this Court in Case No. 24-295M.

8.  Attached as **Exhibit 7** is a true and correct copy of the "Warrant for Inspection" regarding OSHA Inspection 1760872 that this Court issued in Case No. 24-295M.

9.  Attached as **Exhibit 8** is a true and correct copy of the "Ex-Parte Application for Inspection Warrant Under the Occupational Safety and Health Act of 1970" regarding OSHA Inspection 1762269 that Defendants filed with this Court in Case No. 24-294M.

10.  Attached as **Exhibit 9** is a true and correct copy of the "Warrant for Inspection" regarding OSHA Inspection 1762269 that this Court issued in Case No. 24-294M.

11.  On September 5, 2024, OSHA attempted to enforce the Inspection Warrant and presented it to UPS.

12.     OSHA sought to enforce an Inspection Warrant at the McKinney, Texas facility on September 17, 2024.

13.     Both times, UPS reiterated its objection to OSHA conducting temperature readings while its drivers were operating their commercial motor vehicles on public roads.

14.     Attached as **Exhibit 10** is a true and correct copy of an email chain between and among Matthew Epstein, Esq., myself, and others.

15.     Attached as **Exhibit 11** is a true and correct copy of an email chain between and among Lindsay Wofford, Esq., myself, and others.

16.     To date, OSHA has not provided any assurances to UPS that it will not obtain or seek to enforce an Inspection Warrant in the future when temperatures increase.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.


Dated:  <u>November 22, 2024</u>

_____
Brandon J. Brigham

# EXHIBIT 1

 An official website of the United States government. Here's how you know

 **The .gov means it's official.**
Federal government websites often end in .gov or .mil. Before sharing sensitive information, make sure you're on a federal government site.

**The site is secure.**
The **https://** ensures that you are connecting to the official website and that any information you provide is encrypted and transmitted securely.

 **U.S. DEPARTMENT OF LABOR**

## Occupational Safety and Health Administration

CONTACT US | FAQ | A TO Z INDEX | 🌐 LANGUAGES

🔍 Search

Menu

OSHA ⌄   STANDARDS ⌄   ENFORCEMENT ⌄   TOPICS ⌄   HELP AND RESOURCES ⌄   NEWS ⌄   CONTACT US   FAQ   A TO Z INDEX   LANGUAGES

# Inspection Detail

> **Case Status: OPEN**

> **Note:** The following inspection has not been indicated as closed. Please be aware that the information shown may change, e.g. violations may be added or deleted. For open cases, in which a citation has been issued, the citation information may not be available for 5 days following receipt by the employer for Federal inspections or for 30 days following receipt by the employer for State inspections.

## Inspection: 1761398.015 – United Parcel Service, Inc.

### Inspection Information - Office: Dallas Area Office

**Inspection Nr**: 1761398.015

**Report ID**: 0626300

**Date Opened**: 07/12/2024

**Site Address**:
United Parcel Service, Inc.
3000 E. Redbud Boulevard
Mckinney, TX 75069

**Mailing Address**:
270 Redbud Boulevard, Mckinney, TX 75069

**Union Status**: Union

**SIC**:

**NAICS**: 492110/Couriers

**Inspection Type**: Referral

**Scope**: Partial

**Advanced Notice**: N

**Ownership**: Private

**Safety/Health**: Health

**Close Conference**: 07/12/2024

**Emphasis**: N:Heatnep

**Case Closed**:

**Related Activity**

| Type | Activity Nr | Safety | Health |
|------|-------------|--------|--------|
| Referral | 2185712 | | Yes |

**Case Status: OPEN**

OSHA    Standards    Enforcement    Topics    Media Center    Contact Us



**U.S. DEPARTMENT OF LABOR**

Occupational Safety and Health
Administration
200 Constitution Ave NW
Washington, DC 20210
☎ 1-800-321-OSHA
1-800-321-6742
www.osha.gov

**FEDERAL GOVERNMENT**

White House

Benefits.gov

Coronavirus Resources

Disaster Recovery Assistance

DisasterAssistance.gov

USA.gov

Notification of EEO Violations

No Fear Act Data

U.S. Office of Special Counsel

**OCCUPATIONAL SAFETY & HEALTH**

Frequently Asked Questions

A - Z Index

Freedom of Information Act - OSHA

Read the OSHA Newsletter

Subscribe to the OSHA Newsletter

OSHA Publications

Office of Inspector General

**ABOUT THE SITE**

Freedom of Information Act

Disclaimers

Plug-Ins Used on DOL.gov

Accessibility Statement

Connect With DOL

    

# EXHIBIT 2

 An official website of the United States government. Here's how you know

 **The .gov means it's official.**
Federal government websites often end in .gov or .mil. Before sharing sensitive information, make sure you're on a federal government site.

 **The site is secure.**
The **https://** ensures that you are connecting to the official website and that any information you provide is encrypted and transmitted securely.

 **U.S. DEPARTMENT OF LABOR**

## Occupational Safety and Health Administration

CONTACT US    FAQ    A TO Z INDEX    🌐 LANGUAGES

🔍 Search

Menu

OSHA ▾    STANDARDS ▾    ENFORCEMENT ▾    TOPICS ▾    HELP AND RESOURCES ▾    NEWS ▾    CONTACT US    FAQ    A TO Z INDEX    LANGUAGES

# Inspection Detail

| Case Status: OPEN |
|---|

**Note:** The following inspection has not been indicated as closed. Please be aware that the information shown may change, e.g. violations may be added or deleted. For open cases, in which a citation has been issued, the citation information may not be available for 5 days following receipt by the employer for Federal inspections or for 30 days following receipt by the employer for State inspections.

## Inspection: 1760872.015 – Ups Customer Center

**Inspection Information - Office: Wilmington Area Office**

**Inspection Nr**: 1760872.015

**Report ID**: 0317300

**Date Opened**: 07/15/2024

**Site Address**:
Ups Customer Center
721 Hamburg Road
New Castle, DE 19720

**Mailing Address**:
721 Hamburg Road, New Castle, DE 19720

**Union Status**: Union

**SIC**:

**NAICS**: 561431/Private Mail Centers

**Inspection Type**: Referral

**Scope**: Partial

**Advanced Notice**: N

**Ownership**: Private

**Safety/Health**: Health

**Close Conference**: 07/15/2024

**Emphasis**: P:Heatnep, N:Heatnep

**Case Closed**:

**Related Activity**

| Type | Activity Nr | Safety | Health |
|------|-------------|--------|--------|
| Referral | 2184881 | | Yes |

**Case Status: OPEN**

OSHA    Standards    Enforcement    Topics    Media Center    Contact Us



**U.S. DEPARTMENT OF LABOR**

Occupational Safety and Health
Administration
200 Constitution Ave NW
Washington, DC 20210
📞 1-800-321-OSHA
1-800-321-6742
www.osha.gov

**FEDERAL GOVERNMENT**

White House

Benefits.gov

Coronavirus Resources

Disaster Recovery Assistance

DisasterAssistance.gov

USA.gov

Notification of EEO Violations

No Fear Act Data

U.S. Office of Special Counsel

**OCCUPATIONAL SAFETY & HEALTH**

Frequently Asked Questions

A - Z Index

Freedom of Information Act - OSHA

Read the OSHA Newsletter

Subscribe to the OSHA Newsletter

OSHA Publications

Office of Inspector General

**ABOUT THE SITE**

Freedom of Information Act

Disclaimers

Plug-Ins Used on DOL.gov

Accessibility Statement

Connect With DOL

   

# EXHIBIT 4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

FILED

SEP 1 2 2024

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| In the matter of the entire work site at or near | ) ) ) ) |
| 3000 Redbud Blvd. McKinney, TX 75069 | ) ) |
| under the control or custody of | ) ) |
| UNITED PARCEL SERVICE | ) ) |

Inspection Warrant
Docket No. 4:24MJ582

## REQUEST FOR INSPECTION WARRANT UNDER THE OCCUPATIONAL SAFETY AND HEALTH ACT OF 1970

TO:    UNITED STATES MAGISTRATE JUDGE

Attached hereto is the proposed affidavit of David Wilson, Compliance Safety and Health Officer, Occupational Safety and Health Administration (hereinafter referred to as "OSHA"), United States Department of Labor, Dallas Area Office. I have read the affidavit of David Wilson, and to the best of my knowledge and information the affidavit shows reason to believe the following: the employer for whom the inspection warrant is sought is engaged in a business affecting commerce; is within the jurisdiction of the Occupational Safety and Health Act of 1970 (hereinafter referred to as "the Act"); is failing to presently furnish its employees employment, and a place of employment, which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to said employees; was selected for inspection based on a complaint from an employee on July 25, 2024 and a media report on August 17, 2024, of a serious injury, namely, that a United Parcel Service (hereinafter referred to as "UPS") employee was hospitalized after passing out from heat exhaustion while operating his delivery truck; and has refused to consent to OSHA performing heat sampling of the package delivery vehicles originating from the UPS worksite at 3000 Redbud Blvd., McKinney, TX 75069.

1. The United States District Court for the Eastern District of Texas has federal question jurisdiction over the parties' dispute under 28 U.S.C. § 1331 because it arises under the laws of the United States, including section 8 of the OSH Act, 29 U.S.C. §§ 657(a)(1) and 657(a)(2), which authorizes the Secretary to "enter without delay and at reasonable times any...establishment...workplace or environment where work is to be performed by an employee."

2. OSHA has jurisdiction and authority to conduct heat sampling of the package delivery vehicles originating from the UPS. UPS contends that testing or sampling of its trucks is exclusively controlled by the Department of Transportation's Federal Motor Carrier Safety Administration (hereinafter referred to as "FMCSA"). However, FMCSA does not have any regulations requiring motor carriers to alleviate heat stress on the drivers while on the road, and, per the requirements of preemption in *Chao v. Mallard Bay Drilling, Inc.,* 534 U.S. 235, 241-42 (2002), the agency has not exercised authority to regulate the hazards of heat stress within delivery trucks.

3. None of the FMCSA regulations concern the working condition of employees and the dangerous effect of excessive solar heat on the human body.[1] Instead, FMCSA regulations concern heaters, 49 C.F.R. § 393.77; heat damage to brakes, 49 C.F.R.

---

[1] FMCSA does require drivers of vehicles with gross vehicle weight ratings of 26,001 pounds or more to be instructed about extreme driving conditions, such as excessive heat, to obtain commercial driver's licenses (CDLs). *See* 49 C.F.R. Appendix A to Part 380. The average weight of a UPS delivery truck ranges between 16,000 and 24,000 pounds. However, a UPS 18-wheeler with the truck fully loaded can weigh upwards of 80,000 pounds. Moreover, the instruction requirements in Appendix A are not imposed on motor carriers and therefore a carrier may not raise a section 4(b)(1) defense based on these CDL instruction requirements. *Reich v. Muth,* 34 F.3rd 240, 243-45 (4th Cir. 1994) (an employer may not claim section 4(b)(1) preemption unless the employer is bound by the regulation, despite other entities being so bound with respect to the same working condition); *Texas Eastern Transmission Corporation,* 3 BNA OSHC 1601, 1605 (No. 4091, 1975) (same).

Appendix to Part 396; heat from exhaust systems, 49 C.F.R. § 393.83(i); and heat

resistance for joints of liquid fuel tank bodies, 49 C.F.R. § 393.67.

4. Section 8(a)(1) and 8(a)(2) of the Act, 29 U.S.C. §§ 657(a)(1) and 657(a)(2), specifically

authorize the Secretary of Labor to makes inspections and investigations at any

reasonable time, at any plant, factory, establishment, site or other area, workplace, or

environment where work is performed by an employee of any employer.

5. Additional authority for issuing an administrative search warrant comes from the Federal

Code of Regulations and *Marshall v. Barlow's, Inc.*, 436 U.S. 307 (1978). OSHA must

obtain an inspection warrant to conduct a non-consensual inspection. *Marshall v.

Barlow's, Inc.*, 436 U.S. 307 (1978); *see also* 29 C.F.R. § 1903.4(b) (recognizing that

OSHA may obtain a warrant for an inspection in advance of an attempted inspection

under certain circumstances). However, the OSH Act does not authorize administrative

law judges to issue and enforce administrative warrants. *See generally* 29 U.S.C. § 661;

*Donovan v. Sarasota Concrete Co.*, 693 F.2d 1061, 1067 (11th Cir. 1982) ("OSHA may

not issue its own warrants."). Instead, this authority is granted to federal magistrates and

resides in Section 8(a) of the Act. *See* The Magistrates Act of 1976, U.S.C. § 657(a),

(b)(3); *Matter of Establishment Inspection of Gilbert & Bennett Mfg. Co.*, 589 F.2d 1335,

1341 (7th Cir. 1979) (establishing that magistrates have the authority to issue OSHA

warrants).

6. Satisfying the probable cause standard that exists in criminal law is also not required to

issue an inspection warrant. *Marshall* 436 U.S. at 320; *see also Weyerhaeuser Co. v.

Marshall*, 592 F.2d 373, 377 (7th Cir. 1979) ("The requirements of administrative

probable cause are less stringent than those governing criminal probable cause."); *Matter*

*of Establishment Inspection of Gilbert & Bennett Mfg. Co.*, 589 F.2d 1335 (7th Cir. 1979) (rejecting application of criminal probable cause standard for complaint-based OSHA Inspections). In *Marshall*, The Supreme Court identified two ways of making an adequate showing to obtain such an inspection warrant: (1) "specific evidence of an existing violation," or (2) "reasonable legislative or administrative standards for conducting an … inspection are satisfied with respect to a particular [establishment].'" *Id.* at 320-21 (quoting *Camara v. Municipal Court*, 387 U.S. 523, 538 (1967)).

7.  Section 8(f)(1) of the Act provides for complaint-based inspections, which constitute specific evidence of an existing violation. Under that Section, OSHA is required to conduct a "special inspection" as soon as practicable whenever OSHA receives a written employee complaint that reasonably leads the agency to believe that a violation exists at a workplace. "Under Tenth Circuit law, '[w]hen the warrant application is grounded not upon conformance with administrative or legislative guidelines but upon specific evidence of violations such as an employee complaint, there must be some plausible basis for believing that a violation is likely to be found. The facts offered must be sufficient to warrant further investigation or testing.'" *Mashall v. Horn Seed Co.*, 647 F.2d 96, 102 (10th Cir. 1981). The information provided must permit the magistrate judge to determine the need for the intrusion and execute the duty of assuring the search will be reasonable. *Id.*

8.  This inspection is based on a complaint made on July 25, 2025, and a media report on August 17, 2024, of a separate instance of a UPS employee being exposed to the hazards of high heat when the employee was hospitalized after passing out from heat exhaustion

and suffering a vehicular crash. The Court may view the media report at <u>North Texas</u>
<u>UPS driver crashes after passing out from heat - CBS Texas (cbsnews.com).</u>

9. When the proposed affidavit has been properly sworn to and subscribed to in your
presence, we request that you issue an Inspection Warrant authorizing the Area Director,
Supervisor, or any duly appointed Compliance Officer to perform heat sampling of the
package delivery vehicles originating from this UPS worksite and inspect for heat-related
hazards that are causing or are likely to cause death or seriously bodily injury to
employees of UPS.

## TIMING OF INSPECTION

10. The inspection shall begin within fourteen (14) days and shall be conducted and finished
within a reasonable time. The inspection shall be conducted in the daytime between 6:00
a.m. and 10:00 p.m.

## SCOPE OF THE INSPECTION

11. The purpose of this inspection is to determine whether heat related hazards continue to
exist in package delivery vehicles originating from this worksite. We ask permission to
perform the following measures, as they are reasonably tailored to yield evidence
relevant to this inspection:

    a. Inspect a delivery truck to determine whether it is equipped to protect employees
from the hazard of high heat. To this end, we request permission to perform the
following:

        i. Measure the cab-area of the truck;

        ii. Check for appropriate shade and cooling methods like air conditioning and
airflow;

      iii.  Measure the temperature inside the truck throughout a delivery;

      iv.  Photograph and/or video the different areas of the truck to document typical working conditions; and

      v.  Photograph and/or video the truck while on its delivery route to document typical working conditions.

  b.  Measure the temperature of the delivery truck drivers while on their delivery routes.

  c.  Otherwise monitor and document the typical heat-related working conditions to which delivery truck drivers are exposed.

12. We also ask that, on the day of the inspection, UPS provide to OSHA a copy of the truck driver's delivery route for that date. The delivery route will help OSHA enforcement personnel track the truck driver during the workday.

## DESCRIPTION OF WORKSITE

The UPS worksite is located at 3000 Redbud Blvd., McKinney, TX 75069.

DATED: September 5, 2024

Respectfully Submitted,

SEEMA NANDA
Solicitor of Labor

JOHN RAINWATER
Regional Solicitor

LINDSAY WOFFORD
Counsel for Occupational Safety &
Health

by:

*/s/ W. Tyler Nash*

Tyler Nash
Trial Attorney

Signed this the 5th day of September
2024.

Attorneys for Complainant.

# EXHIBIT 5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

FILED

SEP 1 2 2024

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

In the matter of the entire                    )
work site at or near                           )
                                               )    Inspection Warrant )
3000 Redbud Blvd.                              )    Docket No. 4:24MJ582
McKinney, TX 75069                             )
                                               )
under the control or custody of                )
                                               )
UNITED PARCEL SERVICE                          )

## INSPECTION WARRANT

TO:   DAVID WILSON AND/OR ANY OTHER DULY APPOINTED OFFICER OF THE
OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION UNITED STATES
DEPARTMENT OF LABOR (OSHA).

Request having been made and sufficient facts having been presented, the Court finds

probable cause exists to believe that the worksite hereinafter described was selected for

inspection pursuant to a safety complaint and a media report of a serious injury related to heat

stress, namely, that a United Parcel Service (hereinafter referred to as "UPS") employee was

hospitalized after passing out from heat exhaustion and suffering a vehicular crash. The Court

further finds, based on the facts presented, that the proposed scope of the warrant is reasonably.

Therefore,

IT IS HEREBY ORDERED that, pursuant to Section 8(a) of the Occupational Safety and

Health Act of 1970, 29 U.S.C. Section 651 *et seq.*, hereinafter referred to as "the Act," you or

your duly designated representatives are authorized to inspect and perform heat sampling and

testing of delivery truck(s) originating from 3000 Redbud Blvd., McKinney, TX 75069. The

inspection shall be conducted during regular working hours and at other reasonable times, within

reasonable limits, and in a reasonable manner.

TIMING OF INSPECTION

1. The inspection shall begin within fourteen (14) days and shall be conducted and finished within a reasonable time. The inspection shall be conducted in the daytime between 6:00 a.m. and 10:00 p.m.

SCOPE OF INSPECTION

2. Said inspection shall extend to delivery trucks to whether it is equipped to protect employees from the hazard of high heat. To this end, compliance personnel shall be permitted to:

   a. Measure the cab-area of the truck;

   b. Check for appropriate shade and cooling methods like air conditioning and airflow;

   c. Measure the temperature inside the truck throughout a delivery;

   d. Photograph and/or video the different areas of the truck to document typical working conditions; and

   e. Photograph and/or video the truck while on its delivery route to document typical working conditions.

3. Measure the temperature of the delivery truck drivers while on their delivery routes.

4. Otherwise monitor and document the typical heat-related working conditions to which delivery truck drivers are exposed.

5. On the date of the inspection, UPS shall provide to OSHA a copy of the delivery route that the monitored truck driver will be following that day.

DESCRIPTION OF WORKSITE

The UPS worksite is located at 3000 Redbud Blvd., McKinney, TX 75069. OSHA personnel executing this warrant shall give a copy of the warrant to UPS or leave a copy at this location.

No return of this warrant need be made.

Date: September _____, 2024

_____
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT 6

FILED

AUG 3 0 2024

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

SEALED

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------

IN THE MATTER OF
ESTABLISHMENT INSPECTION OF:

Case No. 24-295M

United Parcel Service, Inc. (and its successors)
721 Hamburg Road
New Castle (New Castle County), Delaware 19720

Insp. No. 1760872

------------------------------------------------------------

## EX-PARTE APPLICATION FOR INSPECTION WARRANT UNDER THE OCCUPATIONAL SAFETY AND HEALTH ACT OF 1970

TO THE HONORABLE UNITED STATES MAGISTRATE JUDGE:

JULIE SU, Acting Secretary of Labor, United States Department of Labor, respectfully

applies *ex parte* for a warrant pursuant to Section 8(a) of the Occupational Safety and Health Act

of 1970, (29 U.S.C. § 651, *et seq.*), ("the Act"), and the regulations issued pursuant thereto (29

C.F.R. Part 1903), for the inspection and investigation of the workplace described in the caption

above.

In support of this application, the Secretary of Labor states as follows:

1.      United Parcel Service Inc. ("UPS") operates a parcel delivery and distribution

business at 15994 S. Dupont Highway, Harrington, Delaware 19952 ("Harrington workplace") and

at 721 Hamburg Road in New Castle, Delaware 19720 ("New Castle workplace"). The workplaces

consist of parcel sorting and distribution centers. UPS is covered by the Act because it is engaged

in a business affecting commerce within the meaning of Section 3(3) of the Act, 29 U.S.C.

§ 652(3). It also employs employees at the workplace and is an "employer" within the meaning

of Section 3(5) of the Act, 29 U.S.C. § 652(5).

2.      On July 13, 2024, the Wilmington Area Office of the Occupational Safety and

Health Administration ("OSHA") received an employer-reported referral alleging that an

1

employee had been hospitalized at the New Castle workplace due to dehydration from excessive heat on or about July 9, 2024. *See* Declaration of Dalia Nichols ("Nichols Decl.") ¶¶ 5, 10. On July 17, 2024, the Wilmington Area Office received another employer-reported referral alleging that an employee had been hospitalized at the Harrington workplace due to heat exhaustion on or about July 16, 2024. Nichols Decl. ¶¶ 5, 12.

3.      On July 15, 2024, an OSHA compliance officer attempted to make entry to the New Castle workplace to initiate an inspection, conduct said inspection, and discuss utilizing employee sampling devices as part of reasonable inspection techniques. UPS declined to allow access for employee sampling. Nichols Decl. ¶¶ 10-11.

4.      On July 18, 2024, an OSHA compliance officer attempted to make entry to the Harrington workplace to initiate an inspection, conduct said inspection, and discuss utilizing employee sampling devices as part of reasonable inspection techniques. UPS again declined to allow access for employee sampling. Nichols Decl. ¶¶ 12-13.

5.      OSHA compliance officers returned to the Harrington workplace on August 1, 2024, and August 7, 2024. The employer declined both times to allow OSHA to utilize employee sampling devices as part of reasonable inspection techniques in the area of its vehicles. Nichols Decl. ¶ 13.

6.      In passing the Occupational Safety and Health Act, Congress "declare[d] it to be its purpose and policy . . . to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources." 29 U.S.C. § 651(b). Among the ways that Congress implemented to achieve this purpose was to authorize the Secretary of Labor "to set mandatory occupational safety and health standards." 29 U.S.C. § 651(b)(3).

7.     In order to enforce the Act and the Secretary's health and safety standards, Section

8(a) of the Act gives the Secretary the authority to enter, inspect, and investigate places of

employment, stating:

> In order to carry out the purposes of this Act, the Secretary, upon presenting
> appropriate credentials to the owner, operator, or agent in charge, is authorized
>
> (1)     to enter without delay and at reasonable times any factory, plant,
> establishment, construction site, or other area, workplace or environment where
> work is performed by an employee of an employer; and
>
> (2)     to inspect and investigate during regular working hours and at other
> reasonable times, and within reasonable limits and in a reasonable manner, any such
> place of employment and all pertinent conditions, structures, machines, apparatus,
> devices, equipment, and materials, therein, and to question privately any such
> employer, owner, operator, agent or employee.

29 U.S.C. § 657(a).

8.     "To effectuate the strong congressional policy that every person employed in the

United States be afforded a safe working environment, the Secretary of Labor, as statutory head

of OSHA, was expressly granted the authority to enter and inspect workplaces for occupational

hazards 'during regular working hours and at other reasonable times. . . .'" *Donovan v. Red Star*

*Marine Services, Inc.*, 739 F. 2d 774, 780-81 (2d Cir. 1984) (quoting the Act); *see also Martin v.*

*Int'l Matex Tank Terminals-Bayonne*, 928 F.2d 614, 622 (3d Cir. 1991) (authorizing OSHA

warrant).

9.     In *Marshall v. Barlow's Inc.*, 436 U.S. 307 (1978), the Supreme Court ruled that

the Fourth Amendment requires administrative warrants for objected-to inspections conducted

pursuant to Section 8(a) of the Act.  Following *Camara v. Municipal Court*, 387 U.S. 523, 528-

529 (1967) and *See v. City of Seattle*, 387 U.S. 541, 543 (1967), the Court held that this warrant

requirement is necessary to "provide assurances from a neutral officer that the inspection is

reasonable under the Constitution, is authorized by statute, and is pursuant to an administrative

plan containing specific neutral criteria." *Barlow's*, 436 U.S. at 323. The liberal probable cause

test to be applied in administrative warrant applications was explained by the Court as follows:

> Whether the Secretary proceeds to secure a warrant or other process, with or
> without prior notice, his entitlement to inspect will not depend on his demonstrating
> probable cause to believe that conditions in violation of OSHA exist on the
> premises. Probable cause in the criminal law sense is not required. For purposes
> of an administrative search such as this, probable cause justifying the issuance of a
> warrant may be based not only on specific evidence of an existing violation, but
> also on a showing that "reasonable legislative or administrative standards for
> conducting an ... inspection are satisfied with respect to a particular
> (establishment)." *Camara v. Municipal Court*, *supra*, 387 U.S. at 538. A warrant
> showing that a specific business has been chosen for an OSHA search on the basis
> of a general administrative plan for the enforcement of the Act derived from neutral
> sources such as for example, dispersion of employees in various types of industries
> across a given area, and the desired frequency of searches in any of the lesser
> divisions of the area, would protect an employer's Fourth Amendment rights.

*Barlow's*, 436 U.S. at 321 (footnotes omitted).

    10.    Under the authority of Section 8(g)(2) of the Act to prescribe "regulations dealing

with the inspection of an employer's establishment" the Secretary of Labor has promulgated 29

C.F.R. § 1903.4, authorizing OSHA to obtain compulsory process, including *ex parte* warrants,

to conduct an inspection when faced with the refusal of the employer to permit OSHA to perform

its duties. 29 U.S.C. § 657(a); *see also Barlow's*, 436 U.S. at 307; *Red Star Services*, 739 F.2d at

780-783; *Marshall v. Seaward International, Inc.*, 510 F.Supp. 314 (W.D. Va. 1980), *aff'd.*, 644

F.2d 880 (4th Cir. 1981); *Stoddard Lumber Co. Inc. v. Marshall*, 627 F.2d 984, 989 (9th Cir.

1980).

    11.    The administrative probable cause standard for issuance of an OSHA inspection

warrant may be met through *either* of two means, by showing that: (1) "reasonable legislative or

administrative standards for conducting an area inspection are satisfied with respect to a particular

dwelling"; or (2) there is "specific evidence of a violation" at the workplace. *Int'l Matex Tank

Terminals-Bayonne*, 928 F.2d at 622, 623-624 (citing *Barlow's*, 436 U.S. at 320). "This

interpretation is widely accepted." *Id.* (collecting cases from other Circuits). Furthermore, the relaxed probable cause standard applies to both bases for establishing administrative probable cause. *Id.* at 623-624.

12.    With respect to the administrative probable cause standard based on specific evidence of a violation, the Third Circuit went on to explain:

> [T]he evidence of a specific violation required to establish administrative probable cause, while less than that needed to show a probability of a violation, must at least show that the proposed inspection is based upon a reasonable belief that a violation has been or is being committed and not upon a desire to harass the target of the inspection. This requirement is met by a showing of specific evidence sufficient to support a reasonable suspicion of a violation.

*Id.* at 623-624 (quoting *W. Point-Pepperell, Inc.* v. *Donovan*, 689 F.2d 950, 958 (11th Cir. 1982).

13.    In this case, OSHA has administrative probable cause to inspect the New Castle workplace because (1) there is specific evidence of violations at the workplace; and (2) reasonable legislative or administrative standards for conducting an inspection are satisfied with respect to the workplace.

14.    Here, administrative probable cause exists to inspect this workplace because OSHA has a reasonable belief that a violation has been or is being committed based on an employer self-reported serious injury that was suffered by an employee at the workplace, wherein a worker suffered heat stress illness and was hospitalized. Nichols Decl. ¶¶ 5, 11-12. The alleged hazards include exposure to heat stress and illness during the course of UPS's daily driving route requirements. Nichols Decl. ¶¶ 5, 11-12.

15.    In addition, administrative probable cause exists to inspect this workplace because the inspection sought by this warrant is part of an administrative inspection plan and the desired inspection fits within such plan. To satisfy this avenue of administrative probable cause, two requirements must be met: "1) a reasonable legislative or administrative inspection program must

5

exist and 2) the desired inspection must fit within the program." *Chicago Zoological Soc. v. Donovan*, 558 F. Supp. 1147, 1152 (N.D. Ill. 1983). Both requirements are satisfied here. A reasonable administrative inspection program exists—namely, OSHA's enforcement policies and procedures as detailed in OSHA's Field Operations Manual ("FOM"). Chapter 9, Paragraph I.C. of the FOM lists ten (10) criteria or conditions to be considered to determine if an inspection is warranted. An inspection is deemed to be warranted if any one of these conditions is met. One of these conditions is: "The information concerns an establishment and an alleged hazard covered by a local, regional, or national emphasis program, (or) the Site Specific Targeting Plan." Nichols Decl. ¶¶ 7-8.

16.    In this case, as set forth in the attached Declaration, the heat stress hazards alleged in the referrals are the subject of a National Emphasis Program. Nichols Decl. ¶¶ 7-8. Accordingly, the conditions alleged in the referrals are sufficient to establish administrative probable cause to believe that violations of the Act occurred at the workplace and that the regulations enforced pursuant to the Act exist at the workplace.

17.    Under OSHA's administrative plan for enforcement of the Act, employer reported injury/illness are deemed the second highest level of inspection priority. Nichols Decl. ¶ 8. The inspection and investigation here will be conducted by one or more employees of the Occupational Safety and Health Administration designated by the Secretary of Labor, United States Department of Labor, to be his authorized representative(s), pursuant to proper and reasonable administrative standards contained in regulations duly issued by the Secretary under authorization granted in the Act and found in 29 C.F.R. Part 1903.

18.    The inspection and investigation will be conducted during regular working hours and at other reasonable times, within reasonable limits, and in a reasonable manner. The

6

inspection and investigation will be commenced as soon as practicable after the issuance of this warrant and will be completed with reasonable promptness, in accordance with Section 8(a) of the Act. Upon arrival to UPS's workplace, the authorized representatives of the Occupational Safety and Health Administration will present their credentials to the employer. The Secretary requests that the U.S. Marshals Service be authorized to accompany the authorized representatives of the Occupational Safety and Health Administration to the establishment to assist in the enforcement of the inspection warrant.

19.    Pursuant to Section 8(c) of the Act, 29 C.F.R. § 1903.3, and the Court's instructions, the application in this case requests, in addition to the right to conduct an actual physical inspection of the workplace and private employee interviews, affirmation of the authority to "review records required by the Act and regulations. . . ." *Barlow's*, 436 U.S. at 324, n. 22.

20.    In conducting its inspection, the Act gives OSHA the express authority to privately interview employees at the employer's worksite during regular business hours. *Donovan v. Wollaston Alloys, Inc.*, 695 F.2d 1, 4 n.6 and 6 (1st Cir. 1982) (wherein the employer unlawfully obstructed OSHA's inspection by refusing to permit private employee interviews on its premises); *See also*, 29 C.F.R. § 1903.7(b) ("Compliance Safety and Health Officers shall have authority to . . . question privately any . . . employee").

21.    OSHA is also authorized to utilize employee sampling devices as part of reasonable inspection techniques. 29 C.F.R. § 1903.7(b) (1983); *Service Foundry Company, Inc. v. Donovan*, 721 F.2d 492 (5th Cir. 1984); *Donovan v. Enterprise Foundry, Inc.*, 751 F.2d 30 (1st Cir. 1984). Explicit authority to authorize the use of personal sampling devices during inspections was published in the Federal Register, 47 F.R. 55478-81 on Friday, December 10, 1982, amending 29 C.F.R. Part 1903.7 and was effective on January 10, 1983.

22.     After completion of the requested warrant inspection, a return will be made to the Court showing that the inspection ordered therein has been completed.

WHEREFORE, probable cause having been shown, the Secretary of Labor requests that the Court issue an inspection warrant to permit the inspection of this establishment and to permit the questioning privately—outside the presence of the employer or its agents or counsel—any employee of the establishment, at the location shown in the caption, under the Occupational Safety and Health Act of 1970 by representatives of the Secretary of Labor without delay.

Mailing Address:

U.S. Department of Labor
Office of the Regional Solicitor
1835 Market Street
Mailstop SOL/22
Philadelphia, PA 19103

(215) 861-5122 (voice)
(215) 861-5162 (fax)

epstein.matthew.r@dol.gov

**UNITED STATES DEPARTMENT OF LABOR**

Seema Nanda
Solicitor of Labor

Samantha N. Thomas
Regional Solicitor

*Matthew R. Epstein*
Matthew R. Epstein
Counsel for Safety and Health
PA Bar Id. No. 209387
Admitted to D. Del. as U.S. Government Attorney

Date:  August 29, 2024

8

# EXHIBIT 7

FILED

AUG 3 0 2024

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF DELAWARE

-----------------------------------------------------------------

IN THE MATTER OF
ESTABLISHMENT INSPECTION OF:

Case No. 24-295M



United Parcel Service, Inc. (and its successors)
721 Hamburg Road
New Castle (New Castle County), Delaware 19720

OSHA Insp. No. 1760872

-----------------------------------------------------------------

### WARRANT FOR INSPECTION

TO:     Dalia Nichols, Area Director
        Wilmington Area Office
        Occupational Safety and Health Administration,
        Region III
        United States Department of Labor

Application having been made, probable cause having been demonstrated, and a reasonable
scope of inspection having been proposed:

IT IS HEREBY ORDERED that, pursuant to section 8 of the Occupational Safety and Health
Act of 1970, 29 U.S.C. § 657, YOU OR YOUR DULY DESIGNATED REPRESENTATIVE(S)
ARE AUTHORIZED to enter the workplaces identified above during regular working hours and
to inspect and investigate in a reasonable manner and to a reasonable extent for purposes of a
comprehensive safety and health inspection.

The inspection and investigation will be limited to an evaluation of the hazards set forth in the
self-reported referral filed by the employer, and any hazardous work areas, procedures and/or
working conditions in plain view of the compliance officer. With respect to the hazards
identified in the referral, the inspection shall include investigation of the establishment or other
area, workplace, or environment where work is performed by employees of the employer and to
all pertinent conditions, structures, machines, apparatus, devices, equipment, materials, and all
other things therein (including processes, controls, and facilities) bearing on whether this
employer is furnishing to his employees employment and a place of employment which are free
from recognized hazards that are causing or are likely to cause death or serious physical harm to
his employees, and whether this employer is complying with the occupational safety and health
standards promulgated under the Act and the rules, regulations and orders issued pursuant to the
Act.

Such inspection may include the taking photographs and/or videotaping for evidentiary purposes
and the questioning of any employer, owner, operator, agent or employee of the workplace
privately on the employer's premises during working hours, as authorized by 29 C.F.R.
§ 1903.7(b).

The inspection shall also include the affixing of monitoring devices upon employees to determine the extent of their exposure to potential hazards, as authorized by 29 C.F.R. § 1903.7(b). The inspection and investigation shall also include the opportunity for a representative of the employer and a representative authorized by employees to accompany the Compliance Officer during the physical inspection of the workplace. If there is no authorized representative of the employees, the Compliance Officer shall consult with employees concerning matters of health and safety in the workplace, pursuant to section 8(e) of the Act, 29 U.S.C. § 657(e), and 29 C.F.R. § 1903.8.

The inspection and investigation of the workplace shall commence within seven (7) working days of the issuance of this warrant. The inspection and investigation shall proceed for no longer than ten (10) consecutive working days, which shall commence to run upon the initiation of the inspection, unless the period for inspection is enlarged by further order of the Court. Days on which the workplace is not operating will not be counted as "working days."

A return shall be made to this Court within seven (7) working days following the completion of the inspection.

Date: August 30, 2024          *Christopher J. Burke*

THE HONORABLE CHRISTOPHER J. BURKE
UNITED STATES MAGISTRATE JUDGE

## RETURN OF SERVICE

I hereby certify that a copy of the within warrant was duly served (indicate by check method used).

            : on a duly authorized agent
            : by leaving at principal office
            : or place of business, to wit:

            : _____
            : _____
            : _____

On the company named hereon

_____
(Month) (Day) (Year)

_____
(Name of person making service)

_____
(Official Title)

## RETURN

Inspection of the establishment described in the warrant was made on _____, 202___.


_____
Compliance Officer

# EXHIBIT 8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FILED
AUG 3 0 2024
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

IN THE MATTER OF
ESTABLISHMENT INSPECTION OF:

Case. No. 24-294M

United Parcel Service, Inc. (and its successors)
15994 S. Dupont Highway
Harrington (Kent County), Delaware 19952

OSHA Insp. No. 1762269


SEALED

## EX-PARTE APPLICATION FOR INSPECTION WARRANT UNDER THE OCCUPATIONAL SAFETY AND HEALTH ACT OF 1970

TO THE HONORABLE UNITED STATES MAGISTRATE JUDGE:

JULIE SU, Acting Secretary of Labor, United States Department of Labor, respectfully applies *ex parte* for a warrant pursuant to Section 8(a) of the Occupational Safety and Health Act of 1970, (29 U.S.C. § 651, *et seq.*), ("the Act"), and the regulations issued pursuant thereto (29 C.F.R. Part 1903), for the inspection and investigation of the workplace described in the caption above.

In support of this application, the Secretary of Labor states as follows:

1.    United Parcel Service Inc. ("UPS") operates a parcel delivery and distribution business at 15994 S. Dupont Highway, Harrington, Delaware 19952 ("Harrington workplace") and at 721 Hamburg Road in New Castle, Delaware 19720 ("New Castle workplace"). The workplaces consist of parcel sorting and distribution centers. UPS is covered by the Act because it is engaged in a business affecting commerce within the meaning of Section 3(3) of the Act, 29 U.S.C. § 652(3). It also employs employees at the workplace and is an "employer" within the meaning of Section 3(5) of the Act, 29 U.S.C. § 652(5).

2.    On July 13, 2024, the Wilmington Area Office of the Occupational Safety and Health Administration ("OSHA") received an employer-reported referral alleging that an

1

employee had been hospitalized at the New Castle workplace due to dehydration from excessive heat on or about July 9, 2024. *See* Declaration of Dalia Nichols ("Nichols Decl.") ¶¶ 5, 10. On July 17, 2024, the Wilmington Area Office received another employer-reported referral alleging that an employee had been hospitalized at the Harrington workplace due to heat exhaustion on or about July 16, 2024. Nichols Decl. ¶¶ 5, 12.

3.      On July 15, 2024, an OSHA compliance officer attempted to make entry to the New Castle workplace to initiate an inspection, conduct said inspection, and discuss utilizing employee sampling devices as part of reasonable inspection techniques. UPS declined to allow access for employee sampling. Nichols Decl. ¶¶ 10-11.

4.      On July 18, 2024, an OSHA compliance officer attempted to make entry to the Harrington workplace to initiate an inspection, conduct said inspection, and discuss utilizing employee sampling devices as part of reasonable inspection techniques. UPS again declined to allow access for employee sampling. Nichols Decl. ¶¶ 12-13.

5.      OSHA compliance officers returned to the Harrington workplace on August 1, 2024, and August 7, 2024. The employer declined both times to allow OSHA to utilize employee sampling devices as part of reasonable inspection techniques in the area of its vehicles. Nichols Decl. ¶ 13.

6.      In passing the Occupational Safety and Health Act, Congress "declare[d] it to be its purpose and policy . . . to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources." 29 U.S.C. § 651(b). Among the ways that Congress implemented to achieve this purpose was to authorize the Secretary of Labor "to set mandatory occupational safety and health standards." 29 U.S.C. § 651(b)(3).

2

7.    In order to enforce the Act and the Secretary's health and safety standards, Section 8(a) of the Act gives the Secretary the authority to enter, inspect, and investigate places of employment, stating:

> In order to carry out the purposes of this Act, the Secretary, upon presenting appropriate credentials to the owner, operator, or agent in charge, is authorized
>
> (1)    to enter without delay and at reasonable times any factory, plant, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer; and
>
> (2)    to inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials, therein, and to question privately any such employer, owner, operator, agent or employee.

29 U.S.C. § 657(a).

8.    "To effectuate the strong congressional policy that every person employed in the United States be afforded a safe working environment, the Secretary of Labor, as statutory head of OSHA, was expressly granted the authority to enter and inspect workplaces for occupational hazards 'during regular working hours and at other reasonable times. . . .'" *Donovan v. Red Star Marine Services, Inc.*, 739 F. 2d 774, 780-81 (2d Cir. 1984) (quoting the Act); *see also Martin v. Int'l Matex Tank Terminals-Bayonne*, 928 F.2d 614, 622 (3d Cir. 1991) (authorizing OSHA warrant).

9.    In *Marshall v. Barlow's Inc.*, 436 U.S. 307 (1978), the Supreme Court ruled that the Fourth Amendment requires administrative warrants for objected-to inspections conducted pursuant to Section 8(a) of the Act. Following *Camara v. Municipal Court*, 387 U.S. 523, 528-529 (1967) and *See v. City of Seattle*, 387 U.S. 541, 543 (1967), the Court held that this warrant requirement is necessary to "provide assurances from a neutral officer that the inspection is reasonable under the Constitution, is authorized by statute, and is pursuant to an administrative

3

plan containing specific neutral criteria." *Barlow's*, 436 U.S. at 323. The liberal probable cause

test to be applied in administrative warrant applications was explained by the Court as follows:

> Whether the Secretary proceeds to secure a warrant or other process, with or
> without prior notice, his entitlement to inspect will not depend on his demonstrating
> probable cause to believe that conditions in violation of OSHA exist on the
> premises. Probable cause in the criminal law sense is not required. For purposes
> of an administrative search such as this, probable cause justifying the issuance of a
> warrant may be based not only on specific evidence of an existing violation, but
> also on a showing that "reasonable legislative or administrative standards for
> conducting an ... inspection are satisfied with respect to a particular
> (establishment)." *Camara v. Municipal Court, supra*, 387 U.S. at 538. A warrant
> showing that a specific business has been chosen for an OSHA search on the basis
> of a general administrative plan for the enforcement of the Act derived from neutral
> sources such as for example, dispersion of employees in various types of industries
> across a given area, and the desired frequency of searches in any of the lesser
> divisions of the area, would protect an employer's Fourth Amendment rights.

*Barlow's*, 436 U.S. at 321 (footnotes omitted).

      10.     Under the authority of Section 8(g)(2) of the Act to prescribe "regulations dealing

with the inspection of an employer's establishment" the Secretary of Labor has promulgated 29

C.F.R. § 1903.4, authorizing OSHA to obtain compulsory process, including *ex parte* warrants,

to conduct an inspection when faced with the refusal of the employer to permit OSHA to perform

its duties. 29 U.S.C. § 657(a); *see also Barlow's*, 436 U.S. at 307; *Red Star Services*, 739 F.2d at

780-783; *Marshall v. Seaward International, Inc.*, 510 F.Supp. 314 (W.D. Va. 1980), *aff'd.*, 644

F.2d 880 (4th Cir. 1981); *Stoddard Lumber Co. Inc. v. Marshall*, 627 F.2d 984, 989 (9th Cir.

1980).

      11.     The administrative probable cause standard for issuance of an OSHA inspection

warrant may be met through *either* of two means, by showing that: (1) "reasonable legislative or

administrative standards for conducting an area inspection are satisfied with respect to a particular

dwelling"; or (2) there is "specific evidence of a violation" at the workplace. *Int'l Matex Tank

Terminals-Bayonne*, 928 F.2d at 622, 623-624 (citing *Barlow's*, 436 U.S. at 320). "This

interpretation is widely accepted." *Id.* (collecting cases from other Circuits). Furthermore, the relaxed probable cause standard applies to both bases for establishing administrative probable cause. *Id.* at 623-624.

12.    With respect to the administrative probable cause standard based on specific evidence of a violation, the Third Circuit went on to explain:

> [T]he evidence of a specific violation required to establish administrative probable cause, while less than that needed to show a probability of a violation, must at least show that the proposed inspection is based upon a reasonable belief that a violation has been or is being committed and not upon a desire to harass the target of the inspection. This requirement is met by a showing of specific evidence sufficient to support a reasonable suspicion of a violation.

*Id.* at 623-624 (quoting *W. Point-Pepperell, Inc.* v. *Donovan*, 689 F.2d 950, 958 (11th Cir. 1982).

13.    In this case, OSHA has administrative probable cause to inspect the Harrington workplace because (1) there is specific evidence of violations at the workplace; and (2) reasonable legislative or administrative standards for conducting an inspection are satisfied with respect to the workplace.

14.    Here, administrative probable cause exists to inspect this workplace because OSHA has a reasonable belief that a violation has been or is being committed based on an employer self-reported serious injury that was suffered by an employee at the workplace, wherein a worker suffered heat stress illness and was hospitalized. Nichols Decl. ¶¶ 5, 13. The alleged hazards include exposure to heat stress and illness during the course of UPS's daily driving route requirements. Nichols Decl. ¶¶ 5, 12-13. In addition, administrative probable cause exists because the compliance officer observed several specific hazards during each of his visits to the workplace, including blocked or obstructed means of egress/exits, aisles and passageways, electrical hazards. Nichols Decl. ¶¶ 12-13.

15. In addition, administrative probable cause exists to inspect this workplace because the inspection sought by this warrant is part of an administrative inspection plan and the desired inspection fits within such plan. To satisfy this avenue of administrative probable cause, two requirements must be met: "1) a reasonable legislative or administrative inspection program must exist and 2) the desired inspection must fit within the program." *Chicago Zoological Soc. v. Donovan*, 558 F. Supp. 1147, 1152 (N.D. Ill. 1983). Both requirements are satisfied here. A reasonable administrative inspection program exists—namely, OSHA's enforcement policies and procedures as detailed in OSHA's Field Operations Manual ("FOM"). Chapter 9, Paragraph I.C. of the FOM lists ten (10) criteria or conditions to be considered to determine if an inspection is warranted. An inspection is deemed to be warranted if any one of these conditions is met. One of these conditions is: "The information concerns an establishment and an alleged hazard covered by a local, regional, or national emphasis program, (or) the Site Specific Targeting Plan." Nichols Decl. ¶¶ 7-8.

16. In this case, as set forth in the attached Declaration, the heat stress hazards alleged in the referrals are the subject of a National Emphasis Program. Nichols Decl. ¶¶ 7-8. Accordingly, the conditions alleged in the referrals are sufficient to establish administrative probable cause to believe that violations of the Act occurred at the workplace and that the regulations enforced pursuant to the Act exist at the workplace.

17. Under OSHA's administrative plan for enforcement of the Act, employer reported injury/illness are deemed the second highest level of inspection priority. Nichols Decl. ¶ 8. The inspection and investigation here will be conducted by one or more employees of the Occupational Safety and Health Administration designated by the Secretary of Labor, United States Department of Labor, to be his authorized representative(s), pursuant to proper and

6

reasonable administrative standards contained in regulations duly issued by the Secretary under authorization granted in the Act and found in 29 C.F.R. Part 1903.

18.    The inspection and investigation will be conducted during regular working hours and at other reasonable times, within reasonable limits, and in a reasonable manner. The inspection and investigation will be commenced as soon as practicable after the issuance of this warrant and will be completed with reasonable promptness, in accordance with Section 8(a) of the Act. Upon arrival to UPS's workplace, the authorized representatives of the Occupational Safety and Health Administration will present their credentials to the employer. The Secretary requests that the U.S. Marshals Service be authorized to accompany the authorized representatives of the Occupational Safety and Health Administration to the establishment to assist in the enforcement of the inspection warrant.

19.    Pursuant to Section 8(c) of the Act, 29 C.F.R. § 1903.3, and the Court's instructions, the application in this case requests, in addition to the right to conduct an actual physical inspection of the workplace and private employee interviews, affirmation of the authority to "review records required by the Act and regulations. . . ." *Barlow's*, 436 U.S. at 324, n. 22.

20.    In conducting its inspection, the Act gives OSHA the express authority to privately interview employees at the employer's worksite during regular business hours. *Donovan v. Wollaston Alloys, Inc.*, 695 F.2d 1, 4 n.6 and 6 (1st Cir. 1982) (wherein the employer unlawfully obstructed OSHA's inspection by refusing to permit private employee interviews on its premises); *See also*, 29 C.F.R. § 1903.7(b) ("Compliance Safety and Health Officers shall have authority to . . . question privately any . . . employee").

21.    OSHA is also authorized to utilize employee sampling devices as part of reasonable inspection techniques. 29 C.F.R. § 1903.7(b) (1983); *Service Foundry Company, Inc.*

7

*v. Donovan*, 721 F.2d 492 (5th Cir. 1984); *Donovan v. Enterprise Foundry, Inc.*, 751 F.2d 30 (1st Cir. 1984).  Explicit authority to authorize the use of personal sampling devices during inspections was published in the Federal Register, 47 F.R. 55478-81 on Friday, December 10, 1982, amending 29 C.F.R. Part 1903.7 and was effective on January 10, 1983.

22.    After completion of the requested warrant inspection, a return will be made to the Court showing that the inspection ordered therein has been completed.

WHEREFORE, probable cause having been shown, the Secretary of Labor requests that the Court issue an inspection warrant to permit the inspection of this establishment and to permit the questioning privately—outside the presence of the employer or its agents or counsel—any employee of the establishment, at the location shown in the caption, under the Occupational Safety and Health Act of 1970 by representatives of the Secretary of Labor without delay.

Mailing Address:

U.S. Department of Labor
Office of the Regional Solicitor
1835 Market Street
Mailstop SOL/22
Philadelphia, PA 19103

(215) 861-5122 (voice)
(215) 861-5162 (fax)

epstein.matthew.r@dol.gov

**UNITED STATES DEPARTMENT OF LABOR**

Seema Nanda
Solicitor of Labor

Samantha N. Thomas
Regional Solicitor

*Matthew R. Epstein*
Matthew R. Epstein
Counsel for Safety and Health
PA Bar Id. No. 209387
Admitted to D. Del. as U.S. Government Attorney

Date:  August 29, 2024

8

# EXHIBIT 9

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE**

```
FILED
AUG 3 0 2024
U.S. DISTRICT COURT
DISTRICT OF DELAWARE
```

IN THE MATTER OF
ESTABLISHMENT INSPECTION OF:                    Case No. 24-294M

United Parcel Service, Inc. (and its successors)        OSHA Insp. No. 1762269
15994 S. Dupont Highway
Harrington (Kent County), Delaware 19952



------------------------------------------------------------

**WARRANT FOR INSPECTION**

TO:    Dalia Nichols, Area Director
       Wilmington Area Office
       Occupational Safety and Health Administration,
       Region III
       United States Department of Labor

Application having been made, probable cause having been demonstrated, and a reasonable
scope of inspection having been proposed:

IT IS HEREBY ORDERED that, pursuant to section 8 of the Occupational Safety and Health
Act of 1970, 29 U.S.C. § 657, YOU OR YOUR DULY DESIGNATED REPRESENTATIVE(S)
ARE AUTHORIZED to enter the workplaces identified above during regular working hours and
to inspect and investigate in a reasonable manner and to a reasonable extent for purposes of a
comprehensive safety and health inspection.

The inspection and investigation will be limited to an evaluation of the hazards set forth in the
self-reported referral filed by the employer, and any hazardous work areas, procedures and/or
working conditions in plain view of the compliance officer.  With respect to the hazards
identified in the referral, the inspection shall include investigation of the establishment or other
area, workplace, or environment where work is performed by employees of the employer and to
all pertinent conditions, structures, machines, apparatus, devices, equipment, materials, and all
other things therein (including processes, controls, and facilities) bearing on whether this
employer is furnishing to his employees employment and a place of employment which are free
from recognized hazards that are causing or are likely to cause death or serious physical harm to
his employees, and whether this employer is complying with the occupational safety and health
standards promulgated under the Act and the rules, regulations and orders issued pursuant to the
Act.

Such inspection may include the taking photographs and/or videotaping for evidentiary purposes
and the questioning of any employer, owner, operator, agent or employee of the workplace
privately on the employer's premises during working hours, as authorized by 29 C.F.R. §
1903.7(b).

The inspection shall also include the affixing of monitoring devices upon employees to determine the extent of their exposure to potential hazards, as authorized by 29 C.F.R. § 1903.7(b).  The inspection and investigation shall also include the opportunity for a representative of the employer and a representative authorized by employees to accompany the Compliance Officer during the physical inspection of the workplace. If there is no authorized representative of the employees, the Compliance Officer shall consult with employees concerning matters of health and safety in the workplace, pursuant to section 8(e) of the Act, 29 U.S.C. § 657(e), and 29 C.F.R. § 1903.8.

The inspection and investigation of the workplace shall commence within seven (7) working days of the issuance of this warrant. The inspection and investigation shall proceed for no longer than ten (10) consecutive working days, which shall commence to run upon the initiation of the inspection, unless the period for inspection is enlarged by further order of the Court. Days on which the workplace is not operating will not be counted as "working days."

A return shall be made to this Court within seven (7) working days following the completion of the inspection.

Date: August 30, 2024

*Christopher J. Burke*
THE HONORABLE CHRISTOPHER J. BURKE
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT 10

**Brigham, Brandon J.**

| | |
|---|---|
| **From:** | Epstein, Matthew R - SOL <Epstein.Matthew.R@dol.gov> |
| **Sent:** | Tuesday, September 10, 2024 1:19 PM |
| **To:** | Brigham, Brandon J. |
| **Cc:** | Barillare, Jody C. |
| **Subject:** | RE: Harrington Delaware Warrant |

[EXTERNAL EMAIL]
I'll give you a call.

**From:** Brigham, Brandon J. <brandon.brigham@morganlewis.com>
**Sent:** Tuesday, September 10, 2024 1:18 PM
**To:** Epstein, Matthew R - SOL <Epstein.Matthew.R@dol.gov>
**Cc:** Barillare, Jody C. <jody.barillare@morganlewis.com>
**Subject:** RE: Harrington Delaware Warrant
**Importance:** High

> **CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report Phishing" button on your email toolbar.**

Hi Matt – Do you have time to connect? I connected with my client. We'd like to understand whether the internal discussions you reference below focus solely on this matter or resolving the issue nationwide. UPS would prefer to resolve the issue globally without resorting to litigation, but it also does not intend to allow the threat of OSHA seeking to enforce a warrant to inspect its commercial vehicles linger over it indefinitely. If you're free now, please call my office line, 215.963.4780. If now does not work, please let me know when you're free. Thanks,

**Brandon J. Brigham**
**Morgan, Lewis & Bockius LLP**
2222 Market Street | Philadelphia, PA 19103-3007
Direct: +1.215.963.4780 | Main: +1.215.963.5000 | Fax: +1.215.963.5001
brandon.brigham@morganlewis.com | www.morganlewis.com



**From:** Brigham, Brandon J.
**Sent:** Tuesday, September 10, 2024 12:00 PM
**To:** 'Epstein, Matthew R - SOL' <Epstein.Matthew.R@dol.gov>
**Cc:** Barillare, Jody C. <jody.barillare@morganlewis.com>
**Subject:** RE: Harrington Delaware Warrant

Hi Matt – I'll confer with my client, but I suspect it will move forward with the TRO regardless because OSHA still has the ability to reapply for the warrant and OSHA has not conceded the jurisdictional question. I'll circle back ASAP. Thanks,

**Brandon J. Brigham**
**Morgan, Lewis & Bockius LLP**
2222 Market Street | Philadelphia, PA 19103-3007
Direct: +1.215.963.4780 | Main: +1.215.963.5000 | Fax: +1.215.963.5001
brandon.brigham@morganlewis.com | www.morganlewis.com



---

**From:** Epstein, Matthew R - SOL <Epstein.Matthew.R@dol.gov>
**Sent:** Tuesday, September 10, 2024 11:54 AM
**To:** Brigham, Brandon J. <brandon.brigham@morganlewis.com>
**Cc:** Barillare, Jody C. <jody.barillare@morganlewis.com>
**Subject:** RE: Harrington Delaware Warrant

[EXTERNAL EMAIL]
Hi Brandon,

Thanks for your e-mail, I'll discuss your global offer with OSHA.

With respect to a TRO, our warrant expires this evening and we will not be renewing it tomorrow, or expect that it would be renewed this week. While we do not concede the jurisdictional question, I believe that the TRO would be moot under those circumstances.

Depending on the outcome of some internal discussions, if we decide to reapply for the warrant, we would let you know so that you could re-prepare to file for a TRO.

Please let me know if that will avoid the need to file a TRO from your perspective, and I'll let you know OSHA's thoughts on a static truck monitor.

-Matt

---

**From:** Brigham, Brandon J. <brandon.brigham@morganlewis.com>
**Sent:** Tuesday, September 10, 2024 11:07 AM
**To:** Epstein, Matthew R - SOL <Epstein.Matthew.R@dol.gov>
**Cc:** Barillare, Jody C. <jody.barillare@morganlewis.com>
**Subject:** RE: Harrington Delaware Warrant
**Importance:** High

> **CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report Phishing" button on your email toolbar.**

Hi Matt – We intend to file the complaint and motion for temporary restraining order later today, most likely in the evening, or first thing tomorrow morning. We discussed the District of Delaware's procedures with the clerk's office. When we file our papers, we also file a letter to the Chief Judge asking the matter to be assigned to the Duty Judge. The Duty Judge will then issue an order, and the Order can grant or deny our motion or simply require the parties to appear for argument on it. In other words, no need for any of us to appear in

Wilmington unless we are instructed to do so. We will serve you and Bill the papers once filed. If we should also serve Jud, please let us know.

Separately, UPS would still like to resolve this issue globally with OSHA. To that end, if the agency would agree that it will not seek to monitor temperatures inside of UPS's commercial motor vehicles while on public roads anywhere in the country, UPS is willing to make a truck available to OSHA Compliance Officers in its yards throughout the day so that Compliance Officers can take readings of the Quest WBGT meter in that truck. Given the technology that UPS has installed in its trucks, it's likely that the agency would obtain higher temperature readings by using that method than if Compliance Officers followed UPS trucks on the road while they perform their duties. To be clear, UPS still believes OSHA's proposed protocol creates a safety risk to UPS drivers, the public, as well as Compliance Officers. OSHA and UPS would need to enter into a formal agreement with those terms, and while UPS repeatedly informed the agency that it can take temperature readings of the vehicles while in the yard, we wanted to make it clear that UPS would make a truck available throughout the day for that to occur. We believe that's a creative solution and hope it's one the agency is willing to entertain.

Please let us know if OSHA has changed its recent position that it has authority to inspect working conditions of commercial motor vehicles while on public roads **no later than 2 PM today**. I'm available for a call if needed and I'm in my office today, 215-963-4780. Thanks,

**Brandon J. Brigham**
**Morgan, Lewis & Bockius LLP**
2222 Market Street | Philadelphia, PA 19103-3007
Direct: +1.215.963.4780 | Main: +1.215.963.5000 | Fax: +1.215.963.5001
brandon.brigham@morganlewis.com | www.morganlewis.com



---

**From:** Epstein, Matthew R - SOL <Epstein.Matthew.R@dol.gov>
**Sent:** Monday, September 9, 2024 3:40 PM
**To:** Brigham, Brandon J. <brandon.brigham@morganlewis.com>
**Cc:** Barillare, Jody C. <jody.barillare@morganlewis.com>
**Subject:** RE: Harrington Delaware Warrant

[EXTERNAL EMAIL]
Brandon,

Thanks for checking in with Jud, Bill, and I. As we discussed, I don't anticipate that we would attempt to monitor before the end of the week. We're having some additional internal discussions, so please let me know before you head off to Wilmington.

-Matt

---

**From:** Brigham, Brandon J. <brandon.brigham@morganlewis.com>
**Sent:** Monday, September 9, 2024 11:57 AM
**To:** Epstein, Matthew R - SOL <Epstein.Matthew.R@dol.gov>
**Cc:** Barillare, Jody C. <jody.barillare@morganlewis.com>; LaRosa, William (USADE) <William.LaRosa@usdoj.gov>
**Subject:** RE: Harrington Delaware Warrant

> **CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report Phishing" button on your email toolbar.**

Hi Matt – I'd like my colleague, Jody Barillare, who will be acting as local counsel to be on the call. Given there will be four people, it's probably easier to do a Teams call. I've provided the log-in/dial-in info below and will send an invite shortly as well. Thanks,

---

# Microsoft Teams [Need help?](#)

## [Join the meeting now](#)

Meeting ID: 235 296 843 196
Passcode: 4KGVQm

---

### Dial in by phone

[+1 267-428-0577,,195600589#](#) United States, Philadelphia
[Find a local number](#)
Phone conference ID: 195 600 589#

### Join on a video conferencing device

Tenant key: [morganlewis@m.webex.com](#)
Video ID: 114 547 156 5
[More info](#)
For organizers: [Meeting options](#) | [Reset dial-in PIN](#)



[Org help](#)

---

**Brandon J. Brigham**
**Morgan, Lewis & Bockius LLP**
2222 Market Street | Philadelphia, PA 19103-3007
Direct: +1.215.963.4780 | Main: +1.215.963.5000 | Fax: +1.215.963.5001
[brandon.brigham@morganlewis.com](#) | www.morganlewis.com

CHEVRON DOCTRINE
Insights and Resources ›

---

**From:** Brigham, Brandon J.
**Sent:** Monday, September 9, 2024 11:40 AM
**To:** 'Epstein, Matthew R - SOL' <[Epstein.Matthew.R@dol.gov](#)>
**Cc:** Barillare, Jody C. <[jody.barillare@morganlewis.com](#)>; LaRosa, William (USADE) <[William.LaRosa@usdoj.gov](#)>
**Subject:** RE: Harrington Delaware Warrant

Sounds good, I'll call you at noon at the number below and you can loop in Bill. Thanks,

**Brandon J. Brigham**

**Morgan, Lewis & Bockius LLP**
2222 Market Street | Philadelphia, PA 19103-3007
Direct: +1.215.963.4780 | Main: +1.215.963.5000 | Fax: +1.215.963.5001
brandon.brigham@morganlewis.com | www.morganlewis.com



---

**From:** Epstein, Matthew R - SOL <Epstein.Matthew.R@dol.gov>
**Sent:** Monday, September 9, 2024 11:38 AM
**To:** Brigham, Brandon J. <brandon.brigham@morganlewis.com>
**Cc:** Barillare, Jody C. <jody.barillare@morganlewis.com>; LaRosa, William (USADE) <William.LaRosa@usdoj.gov>
**Subject:** RE: Harrington Delaware Warrant

[EXTERNAL EMAIL]
Brandon,

Sure, Noon or 12:30 would work for me.  I have something at 1.

Do you want to give me a call at 215-861-5122.  And can you include AUSA Bill LaRosa, he's available and at (302) 573-6205.

-Matt

---

**From:** Brigham, Brandon J. <brandon.brigham@morganlewis.com>
**Sent:** Monday, September 9, 2024 11:23 AM
**To:** Epstein, Matthew R - SOL <Epstein.Matthew.R@dol.gov>
**Cc:** Barillare, Jody C. <jody.barillare@morganlewis.com>
**Subject:** RE: Harrington Delaware Warrant

> **CAUTION:** This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report Phishing" button on your email toolbar.

Hi Matt – Are you available at noon to catch-up? If not, what time works for you? Thanks,

**Brandon J. Brigham**
**Morgan, Lewis & Bockius LLP**
2222 Market Street | Philadelphia, PA 19103-3007
Direct: +1.215.963.4780 | Main: +1.215.963.5000 | Fax: +1.215.963.5001
brandon.brigham@morganlewis.com | www.morganlewis.com



---

**From:** Brigham, Brandon J.
**Sent:** Sunday, September 8, 2024 4:05 PM
**To:** 'Epstein, Matthew R - SOL' <Epstein.Matthew.R@dol.gov>

**Cc:** Barillare, Jody C. <jody.barillare@morganlewis.com>
**Subject:** RE: Harrington Delaware Warrant

Great, thank you. Talk to you tomorrow.

**Brandon J. Brigham**
**Morgan, Lewis & Bockius LLP**
2222 Market Street | Philadelphia, PA 19103-3007
Direct: +1.215.963.4780 | Main: +1.215.963.5000 | Fax: +1.215.963.5001
brandon.brigham@morganlewis.com | www.morganlewis.com



---

**From:** Epstein, Matthew R - SOL <Epstein.Matthew.R@dol.gov>
**Sent:** Sunday, September 8, 2024 4:03 PM
**To:** Brigham, Brandon J. <brandon.brigham@morganlewis.com>
**Cc:** Barillare, Jody C. <jody.barillare@morganlewis.com>
**Subject:** RE: Harrington Delaware Warrant

[EXTERNAL EMAIL]
OSHA will not enforce the warrant tomorrow.  Let's try to check in late morning after I've been able to catch up with more people on my end.

-Matt

---

**From:** Brigham, Brandon J. <brandon.brigham@morganlewis.com>
**Sent:** Sunday, September 8, 2024 4:01 PM
**To:** Epstein, Matthew R - SOL <Epstein.Matthew.R@dol.gov>
**Cc:** Barillare, Jody C. <jody.barillare@morganlewis.com>
**Subject:** RE: Harrington Delaware Warrant

> **CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report Phishing" button on your email toolbar.**

Hi Matt – Can you please confirm that OSHA does not intend to enforce the warrant tomorrow? I'd like to be able to tell the associates and paralegals working on this matter that they can relax, at least until tomorrow. If I do not hear from you within by 5 PM EST, I'll give you a call. Thanks,

**Brandon J. Brigham**
**Morgan, Lewis & Bockius LLP**
2222 Market Street | Philadelphia, PA 19103-3007
Direct: +1.215.963.4780 | Main: +1.215.963.5000 | Fax: +1.215.963.5001
brandon.brigham@morganlewis.com | www.morganlewis.com



**From:** Brigham, Brandon J.
**Sent:** Sunday, September 8, 2024 1:08 PM
**To:** 'Epstein, Matthew R - SOL' <Epstein.Matthew.R@dol.gov>
**Cc:** Barillare, Jody C. <jody.barillare@morganlewis.com>
**Subject:** RE: Harrington Delaware Warrant

Thanks Matt, I appreciate the quick response. We'll wait to hear from you confirming that OSHA does not intend to enforce the warrant tomorrow. Enjoy the rest of the weekend until then.

**Brandon J. Brigham**
**Morgan, Lewis & Bockius LLP**
2222 Market Street | Philadelphia, PA 19103-3007
Direct: +1.215.963.4780 | Main: +1.215.963.5000 | Fax: +1.215.963.5001
brandon.brigham@morganlewis.com | www.morganlewis.com



**From:** Epstein, Matthew R - SOL <Epstein.Matthew.R@dol.gov>
**Sent:** Sunday, September 8, 2024 1:05 PM
**To:** Brigham, Brandon J. <brandon.brigham@morganlewis.com>
**Subject:** RE: Harrington Delaware Warrant

[EXTERNAL EMAIL]
Hi Brandon,

I'm reaching out to folks on my end and will check in later this afternoon. I expect that we're not going to be inspecting tomorrow, since our plan had been to wait on UPS's answer at least until noon, and it would be too late to go out after that.

I'll check in later on, give me a call if there is anything urgent. 215-8611-5122 will find me.

-Matt

**From:** Brigham, Brandon J. <brandon.brigham@morganlewis.com>
**Sent:** Sunday, September 8, 2024 12:32 PM
**To:** Epstein, Matthew R - SOL <Epstein.Matthew.R@dol.gov>
**Cc:** Barillare, Jody C. <jody.barillare@morganlewis.com>
**Subject:** RE: Harrington Delaware Warrant
**Importance:** High

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report Phishing" button on your email toolbar.**

Hi Matt – Hope you're enjoying the beautiful weekend. UPS has authorized our firm to seek an order enjoining OSHA from enforcing the warrant. If OSHA intends to execute the warrant on Monday, we intend to move for a temporary restraining order first thing tomorrow morning in the United States District Court for the District of Delaware. That being said, UPS would like to seek a brief stay and discuss the issue with OSHA's national

7

office given the issue's nationwide implications. We're unaware if Doug Parker has authorized the enforcement of the warrant, and if he is unavailable to discuss in the next few days, UPS is willing to meet with the highest ranking member of the agency who is. We doubt the slight delay will prejudice the Secretary. In fact, Monday actually appears to be the coolest day next week, so it might behoove the agency anyway to wait until Wednesday or later so the proposed meeting can occur. If this matter proceeds to litigation and OSHA agrees to the stay, UPS will stipulate to the outside temperatures on the days that the stay was in place. **Please let me know ASAP if OSHA will agree to a short stay and, if so, the length of the stay that it will agree to**. If OSHA intends to enforce the warrant on Monday, we will send you the temporary restraining order papers once they are prepared, and we will inform the court that we notified you of our intention to move for a TRO. Of course, we invite OSHA's counsel to also appear so the judge can evaluate any argument it has on why the court is not bound by controlling Third Circuit law listed below.

Separately, please let me know who from the Department of Justice supervised and directed the Solicitor to apply for the warrant and who from the Department of Justice will be supervising and directing the Solicitor's office moving forward if this matter moves to litigation.

I'm available on my cell, 215-901-7555, to discuss today. Thanks,

**Brandon J. Brigham**
**Morgan, Lewis & Bockius LLP**
2222 Market Street | Philadelphia, PA 19103-3007
Direct: +1.215.963.4780 | Main: +1.215.963.5000 | Fax: +1.215.963.5001
brandon.brigham@morganlewis.com | www.morganlewis.com



**From:** Epstein, Matthew R - SOL <Epstein.Matthew.R@dol.gov>
**Sent:** Friday, September 6, 2024 4:56 PM
**To:** Brigham, Brandon J. <brandon.brigham@morganlewis.com>
**Subject:** RE: Harrington Delaware Warrant

[EXTERNAL EMAIL]
Thanks for the heads up, please let me know as soon as you can because we need to coordinate with multiple agencies.

OSHA needs to make some decisions before the close of business on Monday, so if they don't know before the end of the day, they will probably assume that UPS does not intend to allow inspection and they will factor that into their next steps. I'm reachable all weekend and on Monday, and I'll be able to communicate with OSHA all day Monday.

-Matt

**From:** Brigham, Brandon J. <brandon.brigham@morganlewis.com>
**Sent:** Friday, September 6, 2024 4:27 PM
**To:** Epstein, Matthew R - SOL <Epstein.Matthew.R@dol.gov>
**Subject:** RE: Harrington Delaware Warrant

> **CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report Phishing" button on your email toolbar.**

Hi Matt – My client contact at UPS is actually on PTO and returns Monday. Any chance you'd be willing to receive UPS's position by Monday COB instead of noon? Please let me know when you can. Thanks,

**Brandon J. Brigham**
**Morgan, Lewis & Bockius LLP**
2222 Market Street | Philadelphia, PA 19103-3007
Direct: +1.215.963.4780 | Main: +1.215.963.5000 | Fax: +1.215.963.5001
brandon.brigham@morganlewis.com | www.morganlewis.com



---

**From:** Epstein, Matthew R - SOL <Epstein.Matthew.R@dol.gov>
**Sent:** Friday, September 6, 2024 3:01 PM
**To:** Brigham, Brandon J. <brandon.brigham@morganlewis.com>
**Subject:** RE: Harrington Delaware Warrant

[EXTERNAL EMAIL]
Hi Brandon,

Thank you for your e-mail.  DOL does still intend to inspect for heat stress.  It is our position that OSHA does have jurisdiction and that DOT does not regulate heat stress in vehicle cabs, including package trucks.  The statements from OSHA that you identified do not preclude OSHA jurisdiction; and as you noted, OSHA modified one of those statements recently to make it more expansive.

Nor do we agree that DOT, through FMCSA, has affirmatively addressed the hazard of heat in cabs through the examples you identified.  Although they have the ability to do so, they have chosen not to issue a regulation that addresses the hazard of heat from the sun.

I discussed your specific questions regarding how sampling will be performed with OSHA and have answers below.

Please let me know by Monday at noon whether you intend to allow sampling.

-Matt Epstein


Answers to your questions:

- What equipment does OSHA intend to use to monitor the equipment? Is it the Quest WBGT meter with natural wet-bulb sensor or the Quest Waterless wet-bulb meter identified in the OSHA technical manual or some other device?

QuesTemp 34 will be used

- Does the equipment flash or make noise (e.g., when the batteries run out or if it malfunctions) or otherwise create a distraction for the driver?

The equipment is silent and does not make any noise during operation that would distract the driver. The meter will have a fresh battery before the monitoring begins.

- Even if the equipment is silent, will its presence in the vehicle distract the driver?  Has this been validated? How?

The meter should not distract the driver or impede their operation of the vehicle. Monitoring inside of vehicles has been conducted multiple times this year and last with no issues.

- Will the mounting of the monitoring equipment obstruct the driver's view or otherwise distract the driver?  Has this been validated?  How?

See answer to previous question.

- Note that, per the manual for the 3M QuesTemp monitor, the manufacturer recommends that the monitor be mounted at 3.5 feet or 2 feet high, and recommends tripod mounting "to get the unit away from anything that might block radiant heat or air flow."  How does OSHA plan to accomplish mounting this in the cab of a moving commercial motor vehicle "away from anything that might block radiant heat or air flow," without providing a distraction to the driver or an obstruction of the driver's view?

The exact location the meter will be placed will depend on the vehicle. The exact location will be determined once the CSHO observes the vehicle and employee to determine the best location to get a sample that is representative of the employee's exposure.

- Will the installation of the equipment harm the package car or impact the way it handles?

No

- Is the driver involved as it relates to the regular monitoring of the equipment? If so, how? For example, how often will the driver need to stop?  And where and for how long?  How will these added duties impact the driver's ability to complete his or her route and do so safely?

The meter will need to be checked occasionally. The route and appropriate places to check the meter will be discussed prior to the driver's departure. A plan will be developed between the driver and CSHO to minimize impact on the work and route.

- Is the use of the monitoring equipment consistent with any manufacturer's recommendations?

Yes

---

**From:** Brigham, Brandon J. <brandon.brigham@morganlewis.com>
**Sent:** Thursday, September 5, 2024 1:16 PM
**To:** Epstein, Matthew R - SOL <Epstein.Matthew.R@dol.gov>
**Subject:** RE: Harrington Delaware Warrant

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report Phishing" button on your email toolbar.**

Hi Matt – One other point that I forgot to mention. You asked how this case differs from the MUTCD matter that we litigated recently. Simply put, ALJ Bell ruled that the MUTCD does not have the force of law and, thus, the DOT did not promulgate an occupational safety and health regulation. While that holding is contrary to controlling law, even if it were correct, it's not applicable here. No one can reasonably dispute that the FMCSA

has issued occupational safety and health regulations with the force of law that cover UPS trucks and its drivers while on public roads. Thanks,

**Brandon J. Brigham**
Morgan, Lewis & Bockius LLP
2222 Market Street | Philadelphia, PA 19103-3007
Direct: +1.215.963.4780 | Main: +1.215.963.5000 | Fax: +1.215.963.5001
brandon.brigham@morganlewis.com | www.morganlewis.com



---

**From:** Brigham, Brandon J.
**Sent:** Thursday, September 5, 2024 12:18 PM
**To:** 'Epstein, Matthew R - SOL' <Epstein.Matthew.R@dol.gov>
**Subject:** RE: Harrington Delaware Warrant

Hi Matt – Thanks for your time discussing this issue earlier today. As you noted below, you confirmed that OSHA does not intend to have federal marshals enforce the warrant today and that you would provide us until at least Monday to investigate the issue and relay UPS's position. We also discussed whether OSHA is preempted from monitoring temperatures within UPS's trucks while they travel on public roadways and whether the warrant even allows for OSHA to monitor temperature on the public roadways since the warrant, as worded, only specifies that the agency may enter 15994 S. Dupont Highway to conduct an inspection.

As it relates to the preemption argument, the Third Circuit Court of Appeals established "a two-step inquiry" to determine whether OSHA and the Commission do not have jurisdiction.  Under that court's analysis, the Tribunal must examine whether: (1) a regulation was promulgated by a state or federal agency other than OSHA; and (2) whether the regulation promulgated covers the specific 'working conditions' at issue." *Pa. Elec. Co. v. MSHA*, 969 F.2d 1501, 1504 (3d Cir. 1992).  The Third Circuit defined "working conditions" as the "environmental area in which an employee customarily goes about his daily tasks." *Columbia Gas of Pa. v. Marshall*, 636 F.2d 913, 916 (3d Cir. 1980).  If "a regulation was promulgated that covers the challenged working conditions, OSHA is preempted and the inquiry ends." *Pa. Elec. Co.*, 969 F.2d at 1504.  The Third Circuit stressed that a Court "need not examine the substance of preemptory regulation; as long as it covers the identical working conditions, OSHA's jurisdiction is preempted." *Columbia Gas of Pa.*, 636 F.2d at 918.

As I noted on the call, the Third Circuit's definition of "working conditions" is much broader than other Circuit Courts'. Courts within other jurisdictions look to whether the other federal agency has issued regulations on the specific hazard at issue. The Third Circuit though looks to see if the other agency issued occupational safety and health standards or regulations regarding the "area in which an employee customarily goes about his daily tasks." *Pa. Elec. Co.*, 969 F.2d at 1504

Given the Third Circuit's definition of working conditions, it's clear that OSHA does not have jurisdiction to monitor temperatures on public roadways for the reasons set forth below.

UPS package cars are commercial motor vehicles under the Federal Motor Carrier Safety Act at 49 U.S.C. § 31132 when on the road.  FMCSA regulations are applicable to any vehicle with a gross vehicle rating or gross combination weight rating (whichever is greater) of 4,537 kg (10,001 lbs) or more. 49 C.F.R. § 3905; 49 U.S.C. § 31132(1).  Until this inspection, OSHA has always taken the position that OSHA does not cover DOT/FMCSA trucks while in operation.
For example, in *Secretary of Labor v. Tuscan/Lehigh Dairies, Inc.*, the Secretary of Labor, speaking for OSHA, said that she "has stated her understanding of section 4(b)(1) as it relates to the DOT's safety regulations many times":

She notes that her interpretation in this regard is set out in materials on her website, which is accessible to the public, and is intended to give guidance to the trucking industry. One such document, captioned "Trucking Industry: OSHA Standards," states that: While traveling on public highways, the Department of Transportation (DOT) has jurisdiction. However, while loading and unloading trucks, OSHA regulations govern the safety and health of the workers and the responsibilities of employers to ensure their safety at the warehouse, at the dock, at the rig, at the construction site, at the airport terminals and in all places truckers go to deliver and pick up loads.

22 O.S.H. Cas. (BNA) 1870, 2009 WL 3030764, at *18 (OSHRC ALJ 2009) (emphasis omitted); *see also Secretary of Labor v. Lee Way Motor Freight, Inc.*, 4 OSHC 1968 (OSHRC 1977) ("This case pertains to activities at a freight terminal rather than over-the-road activities. Accordingly, the working conditions involved in this case are not regulated by the Department of Transportation.").

Further, it is my understanding that UPS or its counsel has engaged in similar discussions with the Solicitor's office for the OSHA area offices for Cincinnati, Tulsa, and New York, Texas, and other locations and after those discussions, OSHA determined that they would not perform over the road monitoring on package cars, and completed their investigations.

Also, OSHA notes or has recently noted on its website as follows:

- "OSHA regulations govern the safety and health of the workers and the responsibilities of employers to ensure their safety at the warehouse, dock, construction site, and in other places truckers go to deliver and pick up loads throughout the country." https://www.osha.gov/trucking-industry [osha.gov]

- "OSHA has authority over off-highway loading and unloading, such as warehouses, plants, grain handling facilities, retail locations, marine terminals, wharves, piers, and shipyards." https://www.osha.gov/trucking-industry/loading-unloading [osha.gov]

- "The Department of Transportation (DOT) preempts OSHA's jurisdiction over the interstate trucking industry while traveling public roads." https://web.archive.org/web/20220526152007/https://www.osha.gov/trucking-industry/highway-driving [web.archive.org].   (Within the past year, OSHA slightly revised this wording on its website to "[t]he Department of Transportation (DOT) only preempts OSHA over the interstate trucking industry while traveling public roads with respect to the hazards addressed by FMCSA regulations", (https://www.osha.gov/trucking-industry/highway-driving [osha.gov]), but we do not believe it alters the preemption analysis.)

FMCSA has exercised its jurisdiction with regard to the specific working conditions relating to heat stress while operating a commercial motor vehicle on public highways as follows:

- Regulating ill or fatigued drivers (49 CFR § 392.3)
    - No driver shall operate a commercial motor vehicle, and a motor carrier shall not require or permit a driver to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle. However, in a case of grave emergency where the hazard to occupants of the commercial motor vehicle or other users of the highway would be increased by compliance with this section, the driver may continue to operate the commercial motor vehicle to the nearest place at which that hazard is removed.
- Training requirements (49 CFR § 392.1)

- Medical screening (49 CFR § 391.41 – "The physical qualification examination you take for your Medical Examiner's Certificate, Form MCSA-5876, confirms that you are healthy enough to safely perform the demanding job of a CMV driver and keep our Nation's roads safe." - https://www.fmcsa.dot.gov/medical/driver-medical-requirements/driver-medical-fitness-duty [fmcsa.dot.gov]
- Rest breaks (49 CFR § 395.1).

By contrast, OSHA does not have any specific regulation that addresses heat stress specifically, nor any standards that address ill or fatigued motor carrier drivers.  As you know, while OSHA has been engaged in rulemaking to develop a heat stress standard, there are no OSHA regulations currently in effect.  We also note that we have not seen anything in the National Emphasis Program on Outdoor and Indoor Heat-Related Hazards or OSHA's Technical Manual regarding Heat Stress regarding monitoring moving commercial vehicles on public highways.

In addition, it appears that FMCSA may even regulate the monitoring equipment proposed by OSHA to be used.  *See* 49 C.F.R. § 393.3 ("The use of additional equipment or accessories in a manner that decreases the safety of operation of a commercial motor vehicle in interstate commerce is prohibited. Nothing contained in this subchapter shall be construed to prohibit the use of additional equipment and accessories, not inconsistent with or prohibited by this subchapter, provided such equipment and accessories do not decrease the safety of operation of the motor vehicles on which they are used.").

Ultimately, UPS's biggest concern is the safety of its drivers and, by extension, the public as it relates to on-the-road temperature monitoring.  In order for us to determine whether the temperature monitoring would decrease the safety of operation of the UPS trucks at issue, we have a few questions:

- What equipment does OSHA intend to use to monitor the equipment? Is it the Quest WBGT meter with natural wet-bulb sensor or the Quest Waterless wet-bulb meter identified in the OSHA technical manual or some other device?
- Does the equipment flash or make noise (e.g., when the batteries run out or if it malfunctions) or otherwise create a distraction for the driver?
- Even if the equipment is silent, will its presence in the vehicle distract the driver?  Has this been validated? How?
- Will the mounting of the monitoring equipment obstruct the driver's view or otherwise distract the driver?  Has this been validated?  How?
  - Note that, per the manual for the 3M QuesTemp monitor, the manufacturer recommends that the monitor be mounted at 3.5 feet or 2 feet high, and recommends tripod mounting "to get the unit away from anything that might block radiant heat or air flow."  How does OSHA plan to accomplish mounting this in the cab of a moving commercial motor vehicle "away from anything that might block radiant heat or air flow," without providing a distraction to the driver or an obstruction of the driver's view?
- Will the installation of the equipment harm the package car or impact the way it handles?
- Is the driver involved as it relates to the regular monitoring of the equipment? If so, how? For example, how often will the driver need to stop?  And where and for how long?  How will these added duties impact the driver's ability to complete his or her route and do so safely?
- Is the use of the monitoring equipment consistent with any manufacturer's recommendations?

Please let us know whether OSHA still intends to enforce the subpoena based upon the above. If so, please let us know the answers to these questions and we in turn will inform you UPS's position on whether it intends to allow the monitoring as soon as we can.

Finally, the attorney I was thinking of on our call was Matthew Helman, who as you know left the solicitor's office in April.

13

If you want to schedule a call to discuss further, please let me know. Thanks again,

**Brandon J. Brigham**
**Morgan, Lewis & Bockius LLP**
2222 Market Street | Philadelphia, PA 19103-3007
Direct: +1.215.963.4780 | Main: +1.215.963.5000 | Fax: +1.215.963.5001
brandon.brigham@morganlewis.com | www.morganlewis.com



---

**From:** Epstein, Matthew R - SOL <Epstein.Matthew.R@dol.gov>
**Sent:** Thursday, September 5, 2024 11:38 AM
**To:** Brigham, Brandon J. <brandon.brigham@morganlewis.com>
**Subject:** RE: Harrington Delaware Warrant

[EXTERNAL EMAIL]
Brandon, thanks for reaching out.  Please send me what you'd like me to review.  I may have misspoke about our time limit, it is seven working days, so we think we could inspect through Sept. 11 on the current warrants.

I appreciate you picking this up quickly.  If we need to take a marshal out, please let me know, but we'd prefer to just get the sampling done.  We aren't going to try to sample today, and I expect they can wait until next week.

-Matt

---

**From:** Epstein, Matthew R - SOL
**Sent:** Thursday, September 5, 2024 11:14 AM
**To:** Brigham, Brandon J. <brandon.brigham@morganlewis.com>
**Subject:** RE: Harrington Delaware Warrant

Sure, I'm available the rest of the day, so give me a call at 215-861-5122 whenever works for you.

---

**From:** Brigham, Brandon J. <brandon.brigham@morganlewis.com>
**Sent:** Thursday, September 5, 2024 11:05 AM
**To:** Epstein, Matthew R - SOL <Epstein.Matthew.R@dol.gov>
**Subject:** RE: Harrington Delaware Warrant

> **CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report Phishing" button on your email toolbar.**

Hi Matt – This firm represents UPS regarding the inspection at its Harrington Delaware facility. I was just informed about the warrant, and I can call you a little later to discuss if that works for you. What time are you available? Thanks,

**Brandon J. Brigham**
**Morgan, Lewis & Bockius LLP**
2222 Market Street | Philadelphia, PA 19103-3007
Direct: +1.215.963.4780 | Main: +1.215.963.5000 | Fax: +1.215.963.5001

14

brandon.brigham@morganlewis.com | www.morganlewis.com



**From:** Epstein, Matthew R - SOL <Epstein.Matthew.R@dol.gov>
**Sent:** Thursday, September 5, 2024 9:52 AM
**To:** Seth Bruckner <sbruckner@ups.com>
**Subject:** [EXTERNAL] Harrington Delaware Warrant

**CAUTION! This email originated outside of the organization. Please do not open attachments or click links from an unknown or suspicious origin.**

Good morning,

OSHA staff were at a UPS location in Harrington, Delaware this morning to conduct heat sampling on trucks.  They had a warrant for this sampling but were told that they would not be permitted to conduct sampling.

Please contact me to discuss this.  OSHA has reviewed this issue and concluded that they have jurisdiction to check for heat stress issues on trucks because the Department of Transportation has no regulations concerning heat stress.  If we need to obtain the support of the U.S. Marshalls to get access to do this sampling, we will do so, but I would prefer not to have to do that.


Thanks,

-Matt Epstein


-------------------------------------
**Matthew R. Epstein**
Counsel for Safety and Health
Philadelphia Regional Solicitor's Office
U.S. Department of Labor
1835 Market Street, Mailstop SOL-22
Philadelphia, PA 19103
epstein.matthew.r@dol.gov
215-861-5122 (direct)
215-861-5162 (fax)

NOTICE: This message may contain privileged or confidential information.  If you receive it in error, please contact the Philadelphia Regional Solicitor's Office.

Please do not send correspondence by regular mail or overnight mail without prior notice.  I will accept service of documents by e-mail.

Any correspondence regarding Black Lung Benefits Act matters should be copied to region3blmail@dol.gov.

# EXHIBIT 11

**Brigham, Brandon J.**

| | |
|---|---|
| **From:** | Brigham, Brandon J. |
| **Sent:** | Tuesday, September 17, 2024 1:04 PM |
| **To:** | 'Epstein, Matthew R - SOL'; Wofford, Lindsay - SOL; LaRosa, William (USADE) |
| **Cc:** | Wallace, Thomas Cullen; Barillare, Jody C. |
| **Subject:** | RE: United Parcel Service, Inc. - OSHA Warrant Unlawfully Being Enforced In Texas |

Thanks for confirming Matt.

**Brandon J. Brigham**
**Morgan, Lewis & Bockius LLP**
2222 Market Street | Philadelphia, PA 19103-3007
Direct: +1.215.963.4780 | Main: +1.215.963.5000 | Fax: +1.215.963.5001
brandon.brigham@morganlewis.com | www.morganlewis.com



---

**From:** Epstein, Matthew R - SOL <Epstein.Matthew.R@dol.gov>
**Sent:** Tuesday, September 17, 2024 1:03 PM
**To:** Brigham, Brandon J. <brandon.brigham@morganlewis.com>; Wofford, Lindsay - SOL <Wofford.Lindsay@dol.gov>;
LaRosa, William (USADE) <William.LaRosa@usdoj.gov>
**Cc:** Wallace, Thomas Cullen <cullen.wallace@morganlewis.com>; Barillare, Jody C. <jody.barillare@morganlewis.com>
**Subject:** RE: United Parcel Service, Inc. - OSHA Warrant Unlawfully Being Enforced In Texas

[EXTERNAL EMAIL]
Thanks for sending.  I've been advised by our contact at DOJ that we do not waive the requirements of Rule 4.  As
for who will be handling this litigation, that is to be determined.  Please reach out to all three of us if you hear
anything from the Court.

-Matt Epstein

---

**From:** Brigham, Brandon J. <brandon.brigham@morganlewis.com>
**Sent:** Tuesday, September 17, 2024 12:12 PM
**To:** Wofford, Lindsay - SOL <Wofford.Lindsay@dol.gov>; Epstein, Matthew R - SOL <Epstein.Matthew.R@dol.gov>;
LaRosa, William (USADE) <William.LaRosa@usdoj.gov>
**Cc:** Wallace, Thomas Cullen <cullen.wallace@morganlewis.com>; Barillare, Jody C. <jody.barillare@morganlewis.com>
**Subject:** RE: United Parcel Service, Inc. - OSHA Warrant Unlawfully Being Enforced In Texas

**CAUTION: This email originated from outside of the Department of Labor. Do not click (select) links or open attachments unless you recognize the sender and know the content is safe. Report suspicious emails through the "Report Phishing" button on your email toolbar.**

Hi Lindsay, Matt, & Bill – Attached are the pleadings that we just filed in the U.S. Delaware District Court.
Please let us know if you will accept service on behalf of Defendants or if we need to follow Rule 4 to
effectuate service. Thanks,

**Brandon J. Brigham**
**Morgan, Lewis & Bockius LLP**
2222 Market Street | Philadelphia, PA 19103-3007
Direct: +1.215.963.4780 | Main: +1.215.963.5000 | Fax: +1.215.963.5001
brandon.brigham@morganlewis.com | www.morganlewis.com



---

**From:** Brigham, Brandon J.
**Sent:** Tuesday, September 17, 2024 11:52 AM
**To:** 'Wofford.Lindsay@dol.gov' <Wofford.Lindsay@dol.gov>; 'Epstein, Matthew R - SOL' <Epstein.Matthew.R@dol.gov>; LaRosa, William (USADE) <William.LaRosa@usdoj.gov>
**Cc:** Wallace, Thomas Cullen <cullen.wallace@morganlewis.com>; Barillare, Jody C. <jody.barillare@morganlewis.com>
**Subject:** RE: United Parcel Service, Inc. - OSHA Warrant Unlawfully Being Enforced In Texas

+ Bill LaRosa for visibility

Hi Lindsay, Matt, & Bill — We just filed our papers in the United States District Court for the District of Delaware. We'll send as-filed versions shortly, but we wanted to give you an update that we have moved forward. If we receive information from the court about a hearing on out TRO motion, we will also provide that to you. Thanks,

**Brandon J. Brigham**
**Morgan, Lewis & Bockius LLP**
2222 Market Street | Philadelphia, PA 19103-3007
Direct: +1.215.963.4780 | Main: +1.215.963.5000 | Fax: +1.215.963.5001
brandon.brigham@morganlewis.com | www.morganlewis.com



---

**From:** Brigham, Brandon J.
**Sent:** Tuesday, September 17, 2024 9:51 AM
**To:** 'Wofford.Lindsay@dol.gov' <Wofford.Lindsay@dol.gov>
**Cc:** Wallace, Thomas Cullen <cullen.wallace@morganlewis.com>; 'Epstein, Matthew R - SOL' <Epstein.Matthew.R@dol.gov>; Barillare, Jody C. <jody.barillare@morganlewis.com>
**Subject:** United Parcel Service, Inc. - OSHA Warrant Unlawfully Being Enforced In Texas
**Importance:** High

Good Morning Lindsay — As I suspect you know already, this firm represents United Parcel Service, Inc. ("UPS") regarding the on-going OSHA inspections both in Texas and across the country. We are writing to you to ensure that, as the Dallas Region's OSHA Counsel, you are aware of UPS's position with respect to OSHA's previous requests, both in this region and elsewhere, to install one or more QUESTemp 34 area heat stress monitors in UPS's commercial motor vehicles and then enter those trucks and check those monitors throughout the day while UPS drivers are on their routes (the "Proposed Temperature Monitoring"). It is our understanding that OSHA is currently installing such equipment in one of UPS's trucks over its objections within this region. Put succinctly, UPS contends that: (1) the Proposed Temperature Monitoring would exceed the agency's statutory authority under the Occupational Safety and Health Act ("OSH Act"), 29 U.S.C. §§ 651 et seq., which in turn exposes UPS to an unreasonable search in violation of the Fourth Amendment; (2) that the Proposed Temperature Monitoring would impose more than a minimal burden on UPS in violation of the

OSH Act, and, (3) UPS has serious concerns that the Proposed Temperature Monitoring will pose a significant safety hazard for its drivers and all others on or near the roads on which they operate.

By way of background, and as you also likely already know, OSHA sought to enforce a warrant in the Philadelphia Region, i.e. Region 3, that purportedly would have permitted the Proposed Temperature Monitoring. After UPS again objected and informed Philadelphia Region OSHA counsel, Matt Epstein who's copied here, that it intended to seek temporary restraining order prohibiting the Proposed Temperature Monitoring, OSHA let the warrant expire. We informed Matt that we would obtain a TRO if the agency sought to enforce a warrant regarding the Proposed Temperature Monitoring anywhere in the country and asked him to let the other regional solicitors know our position. Given the agency is attempting to move forward, we intend to file those papers this morning and seek immediate relief from the court. Please let me know who from the Solicitor's office can appear before the Delaware duty judge today, either in person or telephonically, to resolve this issue.

I've copied my colleague Cullen Wallace, who is overseeing the Texas inspections. If a call with you, Matt, and Cullen and me makes sense prior to us filing our papers, we would be happy to  schedule shortly. Otherwise, we will send you the filed versions of the papers. Thanks,


**Brandon J. Brigham**
**Morgan, Lewis & Bockius LLP**
2222 Market Street | Philadelphia, PA 19103-3007
Direct: +1.215.963.4780 | Main: +1.215.963.5000 | Fax: +1.215.963.5001
brandon.brigham@morganlewis.com | www.morganlewis.com

