IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED PARCEL SERVICE,
INC.,

                    Plaintiff,

          v.

OCCUPATIONAL SAFETY AND
HEALTH ADMINISTRATION;
U.S. DEPARTMENT OF LABOR;
and JULIE A. SU, in her official
capacity as Acting Secretary of
Labor,

                 Defendants.

Civil Action No. 24-1036-CFC

---

Jody Barillare, MORGAN LEWIS & BOCKIUS LLP, Wilmington, Delaware;
Brandon J. Bigham, MORGAN LEWIS & BOCKIUS LLP, Philadelphia,
Pennsylvania

        *Counsel for Plaintiff*

Benjamin L. Wallace, United States Attorney, Dylan J. Steinberg, Assistant United
States Attorney, THE UNITED STATES ATTORNEY'S OFFICE FOR THE
DISTRICT OF DELAWARE, Wilmington, Delaware

        *Counsel for Defendants*

**<u>MEMORANDUM OPINION</u>**

March 26, 2026

_Colm F. Connolly_
COLM F. CONNOLLY
CHIEF JUDGE

United Parcel Service, Inc. (UPS), a shipping, receiving, and supply chain management company, has sued the Occupational Safety and Health Administration (OSHA), the U.S. Department of Labor, and Julie Su, in her official capacity as Acting Secretary of Labor, alleging violations of the Fourth Amendment, the Occupational Safety and Health Act, and the Administrative Procedure Act. D.I. 1.

Pending before me is UPS's motion for summary judgment. D.I. 20.

I.

Congress passed the Occupational Safety and Health Act of 1970 (the OSH Act) "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C. § 651(b). OSHA, which is part of the Department of Labor, carries out the OSH Act's mission of assuring that America's workers have "safe and healthful working conditions." OSHA, *About OSHA* (last visited March 25, 2026) https://www.osha.gov/aboutosha [https://perma.cc/TQ97-G8UQ]. It does so by

> setting and enforcing standards; enforcing anti-retaliation provisions of the OSH Act and other federal whistleblower laws; providing and supporting training, outreach, education, and assistance; and working collaboratively with [] state OSHA programs as well as ensuring that they

> are at least as effective as federal OSHA, furthering a national system of worker safety and health protections.

*Id.* Under section 8(a) of the OSH Act, 29 U.S.C. § 657(a), OSHA can enter and inspect workplaces to ensure that employers are carrying out the purposes of the OSH Act.

On August 29, 2024, OSHA filed with Magistrate Judge Christopher J. Burke of this Court two applications for inspection warrants for two UPS worksites in Delaware, one in Harrington and the other in New Castle. D.I. 22-2 at 30–37; D.I. 22-2 at 43–50. The applications are identical in all material respects. In each application, OSHA stated that it had received "employer-reported referral[s] alleging that an employee [at each worksite] had been hospitalized" because of heat exhaustion; that OSHA had "attempted to make entry to [each] workplace to initiate an inspection, conduct said inspection, and discuss utilizing employee sampling devices as part of reasonable inspection techniques"; and that UPS "declined to allow [OSHA] access for employee sampling." D.I. 22-2 at 30–31; D.I. 22-2 at 43–44. The applications did not mention sampling devices other than "employee sampling devices."

The next day, August 30, Magistrate Judge Burke issued a Warrant for Inspection for each of the Delaware worksites. Each warrant provided in relevant part that the investigation of the facility it authorized

shall include investigation of the establishment or other area, workplace, or environment where work is performed by employees of the employer and to all pertinent conditions, structures, machines, apparatus, devices, equipment, materials, and all other things *therein* (including processes, controls, and facilities) bearing on whether this employer is furnishing to his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees, and whether this employer is complying with the occupational safety and health standards promulgated under the [OSH] Act and the rules, regulations and orders issued pursuant to the Act . . . .

The inspection shall also include *the affixing of monitoring devices upon employees* to determine the extent of their exposure to potential hazards, as authorized by 29 C.F.R. § 1903.7(b).

D.I. 22-2 at 39–40 (emphasis added); D.I. 22-2 at 52–53 (emphasis added). Each warrant further provided that OSHA had up to seven working days (i.e., no later than September 10) to begin the authorized inspection, and up to ten working days to complete the inspection.

On the morning of Thursday, September 5, OSHA staff attempted "to conduct heat sampling on [the] trucks" located at UPS's Harrington worksite, "but were told [by UPS] that they would not be permitted to conduct [that] sampling." D.I. 22-2 at 69. Later that day, Matthew Epstein, a lawyer with OSHA, emailed UPS. Epstein recounted in the email that UPS staff at the Harrington worksite had refused to let OSHA conduct "heat sampling on trucks" that morning. He went on

3

to state that OSHA "had a warrant for this sampling" and that "OSHA ha[d] reviewed this issue and concluded that [it] ha[s] jurisdiction to check for heat stress issues on trucks because the Department of Transportation has no regulations concerning heat stress." D.I. 22-2 at 69. Epstein further stated that "[i]f we need to obtain the support of the U.S. Marshalls to get access to do this sampling, we will do so, but I would prefer not to have to do that." D.I. 22-2 at 69.

Less than two hours later, Brandon Brigham, outside counsel for UPS, contacted Epstein. In their initial phone call, the two lawyers "discussed whether OSHA is preempted [by laws and regulations governing the Department of Transportation] from monitoring temperatures within UPS's trucks while they travel on public roadways and whether the [Harrington worksite] warrant even allows for OSHA to monitor temperature on the public roadways since the warrant, as worded, only specifies that [OSHA] may enter [the Harrington] worksite to conduct an inspection." D.I. 22-2 at 65. Epstein also "confirmed" during the call "that OSHA d[id] not intend to have federal marshals enforce the [Harrington worksite] warrant [that day] and that [OSHA] would provide [UPS] until at least Monday[,] [September 9,] to investigate the issue and relay UPS's position." D.I. 22-2 at 65.

In the ensuing three days, Epstein and Brigham exchanged emails about the Harrington worksite warrant, the characteristics of the QuesTemp 34 heat sampling

4

monitor OSHA sought to install in UPS's trucks, and whether OSHA had the requisite authority to conduct heat sampling of trucks while those trucks were on roads beyond the confines of the Harrington worksite. On Sunday, September 8, Brigham told Epstein that "[i]f OSHA intends to execute the [Harrington worksite] warrant on Monday, we intend to move for a temporary restraining order [(TRO)] first thing tomorrow morning in [this Court]." D.I. 22-2 at 61. Epstein responded that afternoon that "OSHA will not enforce the warrant tomorrow" and asked Brigham to speak the following "morning after I've been able to catch up with more people on my end." D.I. 22-2 at 60. The next day, Epstein told Brigham that he did not "anticipate that [OSHA] would attempt to [install] monitor[s] before the end of the week" and that OSHA was 'having some additional internal discussions" about the situation. D.I. 22-2 at 57.

On the morning of Tuesday, September 10, Brigham told Epstein in an email that UPS "intend[s] to file [a] complaint and motion for [a] temporary restraining order later today, most likely in the evening, or first thing tomorrow morning" in this Court. D.I. 22-2 at 56. Less than an hour later, Epstein emailed Brigham:

> With respect to a TRO, our warrant expires this evening and we will not be renewing it tomorrow, or expect that it would be renewed this week. While we do not concede the jurisdictional question, I believe that the TRO would be moot under those circumstances.

> Depending on the outcome of some internal discussions,
> if we decide to reapply for the warrant, we would let you
> know so that you could re-prepare to file for a TRO.

D.I. 22-2 at 56.  Brigham responded that he would confer with UPS but that he

"suspect[ed] [UPS] will move forward with the TRO regardless because OSHA

still has the ability to reapply for the warrant and OSHA has not conceded the

jurisdictional question."  D.I. 22-2 at 55.

The Delaware warrants expired on September 10 without OSHA ever having

installed heat monitoring equipment in a UPS truck.  Two days later, on September

12, OSHA obtained from a magistrate judge in the Eastern District of Texas a

warrant "authoriz[ing] [OSHA] to inspect and perform heat sampling and testing of

delivery truck(s) originating from" a UPS worksite in McKinney, Texas.  D.I. 22-2

at 26.  When OSHA attempted to enforce that warrant on September 17, UPS

reiterated its objection to OSHA conducting temperature readings while its drivers

operated vehicles on public roads.  D.I. 22-2 at 72–73.

Hours later, still on September 17, UPS initiated this action by filing a

Complaint for Declaratory and Emergency Injunctive Relief.  D.I. 1.  UPS seeks by

the Complaint an order that "temporarily, preliminarily, and permanently enjoins"

OSHA from enforcing or renewing existing inspection warrants or moving for new

administrative warrants that allow OSHA to "install one or more QUESTemp 34

area heat stress monitors in UPS's commercial motor vehicles and then enter those

6

trucks and check those monitors throughout the day while UPS drivers are on their routes." D.I. 1 ¶ 1. That same day, UPS also filed a motion for a temporary restraining order and preliminary injunction. D.I. 3. I denied UPS's motion for a TRO on September 23 because UPS "ha[d] not demonstrated an imminent harm or emergent circumstance that would justify the issuance of the extraordinary remedy of a temporary restraining order without hearing from Defendants." D.I. 11 at 1. I set that day a hearing date of November 13, 2024 for UPS's preliminary injunction.

On September 26, the Texas warrant expired without OSHA ever having installed heat monitoring equipment in UPS's trucks.

On October 29, UPS withdrew its motion for a preliminary injunction "principally because Defendants have represented, through counsel, that: (1) since September 26, 2024, 'OSHA has not applied for warrants seeking to monitor for heat stress in UPS trucks anywhere in the country;' and, (2) Defendants have 'no present intention' to renew the [August 30, 2024 Delaware warrants] or obtain a [s]imilar [w]arrant." D.I. 17 at 1–2.

On November 22, 2024, UPS filed the pending motion, seeking three forms of relief: (1) a permanent injunction that prevents the government from "moving for or seeking to obtain from any U.S. District Court an administrative warrant that would allow OSHA to install one or more QUESTemp 34 area heat stress monitors in UPS's commercial motor vehicles and then enter those trucks and check those

monitors throughout the day while UPS drivers are on their routes"; (2) a permanent injunction that restrains the government from "seeking to enforce any [i]nspection [w]arrant that has already been issued"; and (3) a declaration "that OSHA does not have statutory authority to inspect UPS's commercial motor vehicles while in operation on the road." D.I. 20-1 at 1–2. The government argues that I lack subject matter jurisdiction to entertain the motion. (The government has not moved pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss the action for lack of subject matter jurisdiction.)

## II.

Article III of the Constitution "extend[s]" the "judicial Power" of the federal government only to "Cases" and "Controversies." U.S. Const. art. III, § 2; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). For that reason, "[a] claim is not amenable to the judicial process when it is filed too early (making it unripe), when it is filed too late (making it moot)[,] or when the claimant lacks a sufficiently concrete and redressable interest in the dispute (depriving the plaintiff of standing)." *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (internal quotation marks, citation, and alteration omitted); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006) ("The doctrines of mootness[] [and] ripeness, . . . originate in Article III's 'case' or 'controversy' language, no less than standing does.").

8

Standing, ripeness, and mootness overlap. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 484 n.7 (3d Cir. 1998) ("The constitutional dimensions of the standing question bear a close relationship to the questions of ripeness and mootness."); *Airline Pros. Ass'n of Int'l Bhd. of Teamsters, Loc. Union No. 1224 v. Airborne, Inc.*, 332 F.3d 983, 988 (6th Cir. 2003) ("There is unquestionably some overlap between ripeness and standing. When the injury alleged is not actual but merely threatened, standing and ripeness become more difficult to distinguish.") (citation omitted); *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 110 (2d Cir. 2013) ("[T]he ripeness doctrine overlaps with the standing doctrine, most notably in the shared requirement that the plaintiff's injury be imminent rather than conjectural or hypothetical.") (quotation marks and citation omitted); *Lutter v. JNESO*, 86 F.4th 111, 130 (3d Cir. 2023) ("[M]uch of the mootness analysis parallels the tripartite standing test in that a prerequisite for mootness is the loss of standing during the pendency of the litigation."). All three jurisdictional doctrines are implicated here. And as UPS is the party seeking to invoke the subject-matter jurisdiction of this Court, it has the burden of establishing that it has standing and that its claims are ripe and not moot. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction . . . . It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of

9

establishing the contrary rests upon the party asserting jurisdiction.") (citations omitted).

Standing is "an essential and unchanging part" of the case-or-controversy requirement. *Lujan*, 504 U.S. at 560. "Only a party with standing can invoke the jurisdiction of the federal courts." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). To meet the standing requirement, a plaintiff must allege a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984). The personal injury must be "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (quotation marks and citations omitted).

"Ripeness determines when a proper party may bring an action." *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995) (quotation marks and citation omitted). The ripeness doctrine exists "to prevent federal courts 'through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). Ripeness requires a district court "to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Texas v. United States*, 523 U.S. 296, 300–01 (1998) (quotation marks and citation omitted).

10

"Mootness" "presents questions at the opposite end of the timing spectrum from ripeness." Charles H. Koch, Jr. & Richard Murphy, 4 Admin. L. & Prac. § 13:30 (3d ed.). "A [claim] becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a cognizable interest in the outcome.'" *Already, LLC v. Nike*, 568 U.S. 85, 91 (2013) (citation omitted).

### III.

Standing, ripeness, and mootness turn on the relief sought. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought."); *United States v. Jimenez*, 168 F.4th 118, 132 (2d Cir. 2026) ("[R]ipeness is an issue-specific inquiry."); *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 434 n.27 (5th Cir. 2021) ("We assess ripeness claim by claim."); *Road-Con, Inc. v. City of Phila.*, 120 F.4th 346, 356 (3d Cir. 2024) ("Mootness, like standing, turns on the relief sought."). I agree with the government that I lack subject matter jurisdiction over all three claims for relief sought by UPS's motion.

11

A.

UPS's request for a permanent injunction precluding OSHA from "obtain[ing] from any U.S. District Court an administrative warrant that would allow [it] to install one or more QUESTemp 34 area heat stress monitors in UPS's commercial motor vehicles and then enter those trucks and check those monitors throughout the day while UPS drivers are on their routes" is premature (unripe) and would not address an actual or imminent alleged harm necessary for UPS to have standing.  For UPS to suffer the alleged harm it complains of numerous future events would have to occur: (1) UPS would have to fail to address excessive heat hazards in its delivery trucks; (2) UPS employees would have to suffer from severe heat stress while operating UPS trucks on public roads; (3) reports of UPS employees suffering from severe heat stress while operating UPS trucks on public roads would have to come to OSHA's attention; (4) OSHA would have to decide that the reports of these heat stress injuries justified an application for an inspection warrant; (5) a federal magistrate judge would have to determine that probable cause exists to conduct such an inspection; and (6) the magistrate judge would have to issue a warrant that authorized OSHA to install a heat sampling monitor in a UPS truck and to enter that truck and check the monitor throughout the day while a UPS driver drove the truck on her route.  This sixth event is particularly noteworthy because neither of the August 30, 2024 Delaware warrants authorized

12

OSHA to install a heat sampling monitor in a UPS truck, let alone to enter a UPS truck and check the monitor throughout the day when the truck was not on a UPS worksite.

UPS argues that "OSHA's refusal to disavow that it will inspect UPS's [trucks] . . . weighs heavily in favor of finding that the injury is imminent." D.I. 25 at 6. In support of this argument, it cites *Greenberg v. Lehocky*, 81 F.4th 376 (3d Cir. 2023). The Third Circuit held in *Greenberg* that "[c]ourts often determine that there is a credible threat of [enforcement]" when the government refuses to disavow future enforcement efforts. *Id*. at 386. In this case, "OSHA has not assured UPS that it will never seek to obtain and enforce a warrant seeking to conduct heat monitoring in UPS package trucks at some point in the future if new facts arose that would establish administrative probable cause." D.I. 24 at 6. But the problem with UPS's imminence argument is that UPS has not alleged, let alone adduced evidence to show, when or how OSHA will learn of facts establishing probable cause to obtain a warrant authorizing it to install a heat sampling monitor in a UPS truck and enter that truck and check the monitors throughout the day while UPS drivers are on their routes.

Because UPS's claim for an injunction against future warrants "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all," it is "not ripe for adjudication." *Texas*, 523 U.S. at 300 (quotation marks

13

and citation omitted). And because UPS has offered no evidence to show that those future events are imminent and not conjectural or hypothetical, it lacks standing to seek an injunction precluding OSHA from seeking warrants in the future. *Lujan*, 504 U.S. at 560. The fact that UPS's motion has been pending since November 22, 2024, including through the summer of 2025, and OSHA has yet to apply for a warrant to install a heat monitoring device in a UPS truck further confirms that UPS's allegations about the potential for future warrants are conjectural and hypothetical.[1]

B.

UPS's request for a permanent injunction that restrains the government from seeking to enforce "any [i]nspection [w]arrant that has already been issued" is moot because the Delaware and Texas warrants long ago expired.

As best I can tell, UPS argues that this case, and thus this claim for relief, is not moot because the voluntary cessation exception to mootness applies. *See* D.I. 25 at 8. "One scenario in which [courts] are reluctant to declare a case moot is when the defendant argues mootness because of some action it took unilaterally after the litigation began. This situation is often called '[v]oluntary cessation,' and it will moot a case only if it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 306 (3d Cir. 2020) (alteration in original) (citations and quotation marks

14

omitted).  According to UPS, "Defendants' 'voluntary cessation of [inspecting UPS's trucks] does not moot [UPS's] claims for prospective relief' because Defendants have not met 'the heavy burden of establishing that there is no reasonable expectation that the wrong will be repeated.'"  D.I. 25 at 8 (alterations in original) (citation omitted).

The voluntary cessation exception, however, does not apply here because the inspection warrants that UPS seeks to prevent the government from enforcing expired by their own terms and not due to any action by OSHA.  *See Cnty. of Butler v. Governor of Pa.*, 8 F.4th 226, 230 (3d Cir. 2021) ("[T]he voluntary cessation doctrine does not apply here because the orders expired by their own terms . . . ."); *Trump v. Hawaii*, 583 U.S. 941 (2017) (explaining that because orders had "expired by their own terms[,] the appeal no longer present[ed] a live case or controversy") (citation and quotation marks omitted).  UPS argues that *Butler* and *Trump* "are inapposite because th[e] defendants [in those cases] no longer had the legal authority to act," and that in this case "OSHA . . . maintains that it has legal authority to inspect UPS's trucks" and "can thus return to its old ways, meaning an active controversy exists."  D.I. 25 at 8–9 (brackets, quotation marks, and citation omitted).  But in point of fact, OSHA does not claim, and has never claimed, that it has the legal authority to inspect UPS's trucks without a

15

warrant issued by a court. OSHA must seek warrants, supported by probable cause, if it wishes to inspect UPS's trucks.

Accordingly, UPS's motion is moot to the extent it seeks a permanent injunction that bars OSHA from "seeking to enforce any [i]nspection [w]arrant that has already been issued."

## C.

As with UPS's first request for relief, its request for a declaration that OSHA lacks statutory authority to inspect UPS's trucks while in operation on the road is not ripe for adjudication and would not address an actual or imminent alleged harm necessary for UPS to have standing.

UPS insists that its request for this declaration "does not depend on any future contingent events" because when OSHA obtained and tried to enforce the Delaware and Texas warrants it "exceeded its statutory authority, acted ultra vires, and violated the [OSH] Act." D.I. 28 at 1. UPS, however, cannot rely solely on OSHA's past actions to establish that it has standing to pursue declaratory relief. As the Third Circuit held in *Yaw v. Del. River Basin Comm'n*:

> When a plaintiff seeks retrospective (backward-looking) relief in the form of money damages, [it] can establish standing through evidence of a past injury. But when a plaintiff seeks prospective (forward-looking) relief in the form of . . . a declaratory judgment, [it] must show that [it is] likely to suffer future injury. The future injury must also be imminent, meaning that it is certainly impending rather than just merely possible.

16

49 F.4th 302, 318–19 (3d Cir. 2022) (footnotes, quotation marks, and emphasis omitted). Accordingly, to establish it has standing to pursue its claim for declaratory relief, UPS cannot rely solely on OSHA's past actions; it must instead show that it is "likely to suffer future injury" and that this future injury is "imminent." And, as discussed above in connection with UPS's first claim for injunctive relief, UPS has not shown that OSHA's obtaining a new warrant from a magistrate judge to install a heat monitor in a UPS truck is imminent.

UPS also says that "the law and undisputed facts show[] UPS was subjected to an unauthorized search that imposed more than a minimal burden on it in violation of the OSH Act, an injury sufficient to confer standing on it." D.I. 28 at 3. This argument, however, relies on a faulty factual premise. As UPS's counsel admitted at oral argument, OSHA never installed temperature tracking devices in UPS's vehicles to monitor its drivers while on public roads:

> THE COURT: And just to be clear, of the three prior instances, in no instance of the three were the heat devices actually installed in the trucks, correct?
>
> MR. BRIGHAM: Only because we sought redress from the Court, Your Honor.

1.22.25 Tr. (docketed as D.I. 26) 31:6–10. Thus, UPS was *not* subject to the only search that it claims was unauthorized—the installation of temperature tracking

17

devices to monitor its drivers' working conditions on public roads. Accordingly, UPS has not suffered an injury sufficient to confer standing.

Even if UPS had standing, it has not shown that its claim for declaratory relief is ripe for review. To decide whether a claim for declaratory relief is ripe, the Third Circuit employs a three-factor test first articulated in *Step-Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643 (3d Cir. 1990). *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 539–40 (3d Cir. 2017). Under the *Step-Saver* test, courts consider (1) the adversity of the parties' interests, (2) the conclusiveness of the judgment, and (3) the practical help, or utility, of the judgment. *Step-Saver*, 912 F.2d at 647.

UPS fails the first prong of the *Step-Saver* test. "Parties' interests are adverse where harm will result if the declaratory judgment is not entered." *Obusek*, 72 F.3d at 1154. "Where the plaintiff's action is based on a contingency, it is unlikely that the parties' interests will be sufficiently adverse." *Armstrong World Indus., Inc. by Wolfson v. Adams*, 961 F.2d 405, 411 (3d Cir. 1992). Here, as discussed above, the threatened unauthorized inspection UPS seeks to have declared unlawful rests on a chain of speculative events that are far from certain to occur and indeed may never materialize. In short, UPS has not shown that a threat of an alleged unauthorized search "is real and substantial, [and] 'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"

18

*Salvation Army v. Dep't of Cmty. Affs.*, 919 F.2d 183, 192 (3d Cir.1990) (quoting

*Steffel v. Thompson*, 415 U.S. 452, 460 (1974)).

IV.

For the reasons discussed above, I will deny UPS's motion for summary

judgment because I lack subject matter jurisdiction over it.

The Court will issue an Order consistent with this Memorandum Opinion.

---

[1] There are many reasons why I have not addressed UPS's motion until today. I will say a word about a few of them.

For starters, UPS filed its motion more than two months after the Delaware warrants had expired and fifty-seven days after the Texas warrant had expired, and OSHA had not sought any new inspection warrants after the Texas warrant expired. On the day it filed the motion—November 22, 2024—the high temperature in Dover, Delaware, (the nearest city to Harrington that the National Weather Service publishes temperature records for) was fifty-five degrees Fahrenheit and the low temperature was thirty-six degrees. Nat'l Weather Serv., *Almanac for Dover, DE November 22, 2024* (last accessed March 26, 2026) https://www.weather.gov/wrh/Climate?wfo=phi [https://perma.cc/B48L-NNEM]. The temperature in McKinney, Texas that day ranged between thirty-six and sixty-seven degrees Fahrenheit. Nat'l Weather Serv., *Almanac for McKinney Municipal AP, TX November 22, 2024* (last accessed March 26, 2026) https://www.weather.gov/wrh/Climate?wfo=fwd [https://perma.cc/V88K-EVKR]. Thus, there was at the time the motion was filed no imminent threat of heat exhaustion to UPS drivers in the relevant geographic regions and, accordingly, no likelihood that OSHA would seek or that a magistrate judge would issue a warrant authorizing OSHA to install heat monitors in UPS trucks.

The motion was filed seventeen days after Donald Trump was elected President, briefing on the motion was completed on December 23, and I held oral argument on the motion on January 22, 2025, two days day after President Trump's

19

inauguration. In the applications for the Delaware warrants, OSHA had stated that "the heat stress hazards alleged in the [employer-]referrals [that had prompted OSHA's investigation of UPS] [we]re the subject of a National Emphasis Program" and that "[a]ccordingly, the conditions alleged in the referrals are sufficient to establish administrative probable cause to believe that violations of the [OSH] Act occurred at the workplace and that the regulations enforced pursuant to the Act exist at the workplace." D.I. 22-2 at 35; D.I. 22-2 at 48. The National Emphasis Program was issued in "response to President Biden's Executive Order (EO) 14008, 'Tackling the Climate Crisis at Home and Abroad.'" D.I. 25-1 at 9. On January 16, 2025, the Biden Administration issued a notice extending the National Emphasis Program "until April 8, 2026, or until superseded by an updated directive." D.I. 28-1 at 3. Four days later, on President Trump's first day in office, he issued EO 14148, "Initial Recissions of Harmful Executive Orders and Actions." *See* Exec. Order No. 14148, 90 Fed. Reg. 8237 (Jan. 20, 2025). EO 14148 revoked several executive orders, including EO 14008, and instructed the "Director of the Domestic Policy Council (DPC) and the Director of the National Economic Council (NEC) [to] review all Federal Government actions taken pursuant to" the revoked orders and to "take necessary steps to rescind, replace, or amend such actions as appropriate." *See id.* Thus, EO 14148's revocation of the National Emphasis Program provided an additional reason to believe that UPS's motion did not present a live controversy amendable to judicial process under Article III.

UPS said nothing at the January 22 oral argument to persuade me that its motion presented a justiciable dispute. And by then, we were in the middle of winter. I decided to sit tight until the weather warmed to see if OSHA would try again to install heat monitors in UPS trucks. It apparently did not. Summer came and went without any word from UPS of its drivers suffering from heat exhaustion or of OSHA seeking to obtain or enforce an inspection warrant for a UPS truck. At that point, there being no doubt that this case has never presented an emergency, I moved the motion to the bottom of the pile of the 150 or so motions I am tasked with deciding every six months.

20